**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE**

| | |
|---|---|
| RACHEL WELTY and <br> AFTYN BEHN, <br><br> *Plaintiffs*, <br><br> v. <br><br> BRYANT C. DUNAWAY, <br> JASON LAWSON, <br> JENNINGS H. JONES, <br> ROBERT J. CARTER, <br> RAY WHITLEY, ROBERT J. NASH, <br> GLENN FUNK, STACEY EDMONSON, <br> BRENT COOPER, RAY CROUCH, and <br> HANS SCHWENDIMANN, <br><br> *Defendants*. | Case No. _____ |

**VERIFIED COMPLAINT**

**I. INTRODUCTION**

1. Beginning July 1, 2024, Tennessee will criminalize both pure speech about legal abortion care and helping young people access legal abortion care. In particular, when Public Chapter No. 1032 takes effect, Tennessee law will provide that:

> (a) An adult commits the offense of abortion trafficking of a minor if the adult intentionally recruits, harbors, or transports a pregnant unemancipated minor within this state for the purpose of:
>
> . . .
>
> > (2) Procuring an act that would constitute a criminal abortion under § 39-15-213 for the pregnant unemancipated minor, regardless of where the abortion is to be procured; or
> >
> > (3) Obtaining an abortion-inducing drug for the pregnant unemancipated minor for the purpose of an act that would constitute

-1-

> a criminal abortion under § 39-15-213, regardless of where the abortion-inducing drug is obtained.
>
> (b)     A violation of subsection (a) is a Class A misdemeanor and shall be punished by imprisonment for eleven (11) months and twenty-nine (29) days.

**Ex. 1**, Public Chapter No. 1032.

2.      The effect of Public Chapter No. 1032—which is also its intended purpose—is to criminalize helping a pregnant unemancipated minor obtain *legal* abortion care "regardless of where the abortion is to be procured" and "regardless of where the abortion-inducing drug is obtained." Thus, beginning July 1, 2024, helping a pregnant unemancipated minor obtain a legal abortion will be a crime in Tennessee.

3.      In addition to criminalizing assistance obtaining legal abortion care, Public Chapter No. 1032 separately criminalizes pure speech about such care. In particular, an adult who intentionally "recruits" a pregnant unemancipated minor in Tennessee for the purpose of either procuring a legal abortion out of state or obtaining a legal abortion-inducing drug will risk criminal prosecution and "imprisonment for eleven (11) months and twenty-nine (29) days."

4.      The word "recruits"—which is susceptible to many different definitions—is undefined by Public Chapter No. 1032. The Defendant District Attorneys who are tasked with enforcing Public Chapter No. 1032 have also refused to clarify its meaning. These failures render the prohibition unconstitutionally vague.

5.      Regardless of how "recruits" is defined, the prohibition criminalizes pure speech based on its content and the viewpoint a speaker expresses. The First Amendment prohibits such content- and viewpoint-based censorship, though. Furthermore, by criminalizing so much constitutionally protected speech, Section 1 of Public Chapter No.

1032 is unconstitutionally overbroad.

6. For these reasons, this Court should declare Section 1 of Public Chapter No. 1032 unconstitutional—both facially and as applied to the Plaintiffs—and it should permanently enjoin the Defendants from enforcing Section 1 of Public Chapter No. 1032.

## II. PARTIES

7. Plaintiff Rachel Welty is a Tennessee citizen and a resident of Davidson County. She may be contacted through counsel.

8. Plaintiff Aftyn Behn is a Tennessee citizen and a resident of Davidson County. Representative Behn is also an elected Representative of the Tennessee General Assembly. Representative Behn may be contacted through counsel.

9. The Defendants—Bryant C. Dunaway, Jason Lawson, Jennings H. Jones, Robert J. Carter, Ray Whitley, Robert J. Nash, Glenn Funk, Stacey Edmonson, Brent Cooper, Ray Crouch, and Hans Schwendimann—are Tennessee's elected District Attorneys General for Tennessee's 13th, 15th, 16th, 17th, 18th, 19th, 20th, 21st, 22nd, 23rd and 32nd judicial districts, which encompass Middle Tennessee. Each Defendant has criminal enforcement authority and an affirmative statutory obligation to "prosecute in the courts of the district all violations of the state criminal statutes and perform all prosecutorial functions attendant thereto[.]" Tenn. Code Ann. § 8-7-103(1). Each Defendant may be served through the Tennessee Attorney General. The Defendants are sued in their official capacities only.

## III. JURISDICTION AND VENUE

10. This Court has jurisdiction over the Plaintiffs' federal claims in this civil action pursuant to 28 U.S.C. § 1331.

11. As the judicial district where one or more Defendants reside and where a

substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred, venue is proper here pursuant to 28 U.S.C. § 1391(b)(1)–(2).

## IV. FACTUAL ALLEGATIONS

A. **PLAINTIFF RACHEL WELTY**

12. Plaintiff Rachel Welty is an outspoken and unapologetic advocate for safe and healthy access to abortion care.

13. In her role as an advocate for safe and healthy access to abortion care, Ms. Welty has on many occasions participated in informational campaigns and distributed literature about abortion access, including how to access legal abortion-inducing drugs. Some examples of literature Ms. Welty has distributed are attached to this complaint as **Ex. 2**.

14. Most of Ms. Welty's advocacy is concentrated in the Middle Tennessee area, including in each of the Defendants' judicial districts.

15. Ms. Welty is also a member of an abortion fund that provides resources to clients who need safe and healthy access to legal abortion medication and legal out-of-state abortion care that they can no longer obtain in Tennessee.

16. Ms. Welty's advocacy for safe and healthy access to legal abortion care is not hidden, and it is not intended to be.

17. Ms. Welty advocates—accurately—that "[a]bortion is safe, common, and normal[.]"

18. Ms. Welty advocates for and helps facilitate Tennesseans' access to legal abortion care, including out-of-state abortion care and abortion-inducing drugs.

19. Ms. Welty's advocacy is not limited to emancipated minors or to Tennesseans who happen to be over the age of 18, and it is not intended to be.

-4-

20. Ms. Welty—an attorney—is well-known in Tennessee for helping pregnant, unemancipated minors receive access to legal abortion care, having handled "judicial bypass" representations for years before that legal avenue to abortion care was eliminated. *See* **Ex. 3**, Paige Pfleger, *Tennessee teens can no longer seek judicial bypass for abortions*, NPR (Sep. 9, 2022), https://www.npr.org/2022/09/09/1122123601/tennessee-teens-can-no-longer-seek-judicial-bypass-for-abortions (discussing Ms. Welty's work helping young teens—many of whom were victims of rape and incest—obtain judicial bypasses to access abortion care).

21. As a result of that work, Ms. Welty still receives calls from pregnant, unemancipated minors who want assistance accessing legal abortion care but do not have parental consent to access it.

22. Ms. Welty has historically helped those clients access legal abortion care.

23. Ms. Welty would like to continue helping pregnant, unemancipated minors access legal abortion care.

24. Given the foregoing, in anticipation of Public Chapter No. 1032 taking effect, Ms. Welty developed serious concerns that the law—which directly affects her day-to-day operations—would criminalize her advocacy and subject her to civil wrongful death liability.

25. Thus, Ms. Welty sought reasonable notice of what Public Chapter No. 1032 prohibits from the Defendants.

26. In particular, on June 6, 2024, Ms. Welty—through counsel—sent a letter to the Defendants regarding Public Chapter No. 1032's "recruit[ment] prohibition. *See* **Ex. 4**, Welty Letter. Ms. Welty specifically asked the Defendants "to please define the proscribed behavior with sufficient particularity to provide a person of ordinary

intelligence with reasonable notice of the conduct that is prohibited." *Id.* at 2.

27. Ms. Welty asked for a response from the Defendants by 4:30 p.m. CST on June 20, 2024.

28. None of the Defendants responded.

29. Through counsel, Ms. Welty separately expressed to the Defendants her "significant concerns that Public Chapter No. 1032 is constitutionally infirm." In particular, Ms. Welty noted:

> Even setting aside vagueness issues, any reasonable interpretation of the law appears to criminalize pure speech and *advocacy*—a viewpoint-based speech restriction. Worse: the law appears to criminalize advocating for and facilitating access to *legal* abortion care, including abortion care provided out-of-state in compliance with the laws of sovereign jurisdictions.

*Id.* at 3.

30. Based on these infirmities, Ms. Welty asked each Defendant to "disavow all enforcement of Public Chapter No. 1032's 'recruit[ment]' prohibition against Ms. Welty once the law takes effect."

31. None of the Defendants disavowed enforcement of Public Chapter No. 1032's "recruit[ment]" prohibition against Ms. Welty.

32. The scope of Public Chapter No. 1032's "recruit[ment]" prohibition gives rise to additional criminal liability well beyond its terms, including for related inchoate offenses like criminal attempt, solicitation, and conspiracy, *see* Tenn. Code Ann. § 39-12-107(a)–(c), and for additional crimes like criminal responsibility, *see* Tenn. Code Ann. § 39-11-402(1)–(3).

33. Unless Public Chapter No. 1032's "recruit[ment]" prohibition is declared unconstitutional and enjoined, Ms. Welty cannot safely continue her advocacy for safe and healthy access to legal abortion care without risking criminal prosecution.

34. Ms. Welty's fear of being subjected to criminal prosecution for violating Public Chapter No. 1032's recruitment prohibition if she does not restrict her speech is both objectively and subjectively credible.

35. Especially when paired with the availability of civil enforcement by private parties, the criminal nature of the threat that Ms. Welty faces—a lengthy mandatory-minimum jail sentence following a criminal charge that may be initiated by any law enforcement officer or by an individual citizen through Tennessee's citizen grand jury process—significantly heightens the risk of chilled expression.

### B. PLAINTIFF AFTYN BEHN

36. Plaintiff Aftyn Behn is an elected Representative of the Tennessee General Assembly.

37. Before the bill that ultimately became Public Chapter No. 1032 was considered for a final floor vote, Representative Behn posted publicly in opposition to the bill, pledging to "exercise [her] right to publicly share information about how to seek an abortion which could be considered illegal under this law." *See* **Ex. 5**, Behn Tweets, at 4.

38. Representative Behn further stated that she "welcome[s] the opportunity to take a young person out of state who wants to have an abortion even if it lands me in jail." *Id.* at 5.

39. During the Tennessee House of Representatives' discussion of the bill that ultimately became Public Chapter No. 1032, another representative sought clarification about the meaning of "recruit[ment]" under the bill. *See* **Ex. 6** at 20:9–12 ("Mr. Sponsor, I would like to ask you, could you explain in the bill where it talks about an ado -- an adult recruiting these minors, could you explain what that would look like, please?").

40. On the Tennessee House floor, the primary sponsor of the bill answered the

-7-

Case 3:24-cv-00768    Document 1    Filed 06/24/24    Page 7 of 15 PageID #: 7

representative's question as follows:

> REPRESENTATIVE ZACHARY: "[U]nfortunately, there's even a member of this body that recently tweeted out, 'I welcome the opportunity to take a young person out of state who wants to have an abortion, even if it lands me in jail.' . . .
>
> REPRESENTATIVE ZACHARY: And so answering the question of recruitment, I'm answering the question of recruitment. Representative, that is what recruitment looks like.

*Id.* at 21:9–17.

41. According to the sponsor of Public Chapter No. 1032, merely stating: "I welcome the opportunity to take a young person out of state who wants to have an abortion, even if it lands me in jail" is a criminal violation of Public Chapter No. 1032's "recruit[ment]" prohibition.

42. Representative Behn wants to continue her advocacy for young people who need legal abortion care. However, beginning July 1, 2024, Representative Behn cannot do so safely without risking criminal prosecution.

43. Representative Behn's fear of being subjected to prosecution for violating Public Chapter No. 1032's recruitment prohibition is objectively and subjectively credible.

44. Especially when paired with the availability of civil enforcement by private parties, the criminal nature of the threat that Representative Behn faces—a lengthy mandatory-minimum jail sentence following a criminal charge that may be initiated by any law enforcement officer or by an individual citizen through Tennessee's citizen grand jury process—significantly heightens the risk of chilled expression.

45. As an elected official and legislator, Representative Behn's chilled expression regarding a matter of obvious public importance is especially destructive. "The manifest function of the First Amendment in a representative government requires

that legislators be given the widest latitude to express their views on issues of policy." *Bond v. Floyd*, 385 U.S. 116, 135–36 (1966). Put another way: "The role that elected officials play in our society makes it all the more imperative that they be allowed freely to express themselves on matters of current public importance." *Wood v. Georgia*, 370 U.S. 375, 395 (1962). Thus, chilling Representative Behn's speech interferes with her role and duty as an elected official and simultaneously violates her constituents' right to hear and receive information from her.

46. Based on the credible threat of Public Chapter No. 1032 being enforced against her, Ms. Behn cannot safely express herself on matters of current public importance.

## V. CAUSES OF ACTION

### CLAIM #1: 42 U.S.C. § 1983—VIOLATION OF THE FOURTEENTH AMENDMENT (UNCONSTITUTIONAL VAGUENESS)

47. The Plaintiffs incorporate and reallege the foregoing allegations as if fully set forth herein.

48. "The void-for-vagueness doctrine requires that [a] statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *United States v. Kerns*, 9 F.4th 342, 351 (6th Cir. 2021) (quoting *United States v. Farah*, 766 F.3d 599, 614 (6th Cir. 2014)) (alteration in original).

49. "To withstand a facial challenge [that a statute is unconstitutionally vague], an enactment must define the proscribed behavior with sufficient particularity to provide a person of ordinary intelligence with reasonable notice of prohibited conduct and to

-9-

encourage non-arbitrary enforcement of the provision." *Am. Booksellers Found. for Free Expression v. Strickland*, 601 F.3d 622, 627 (6th Cir. 2010) (quoting *Belle Maer Harbor v. Charter Twp. of Harrison*, 170 F.3d 553, 557 (6th Cir.1999)) (alterations in original).

50. The word "recruits," as used in Public Chapter No. 1032, is not defined in Public Chapter No. 1032.

51. The word "recruits," as used in Public Chapter No. 1032, is susceptible to a wide range of potential meanings.

52. The word "recruits," as used in Public Chapter No. 1032, criminalizes some amount of pure speech.

53. In response to a specific request to clarify the meaning of the word "recruits," as used in Public Chapter No. 1032, and define its scope, the Defendants have refused.

54. Based on both the undefined nature of the word "recruits," as used in Public Chapter No. 1032, and the Defendants' refusal to clarify their own interpretation of the term before Public Chapter No. 1032 takes effect, Public Chapter No. 1032 neither defines the proscribed behavior with sufficient particularity to provide a person of ordinary intelligence with reasonable notice of prohibited conduct nor encourages non-arbitrary enforcement of the provision.

55. As a result, Public Chapter No. 1032's "recruit[ment]" prohibition is unconstitutionally vague and contravenes the Fourteenth Amendment's prohibition against vague laws.

56. The uncertain reach of Public Chapter No. 1032's "recruit[ment]" prohibition subjects disfavored speakers to the credible threat of criminal prosecution, privately-enforced civil wrongful death liability, and a lengthy mandatory-minimum jail

sentence.

57. Absent a declaration that Public Chapter No. 1032's "recruit[ment]" prohibition is unconstitutionally vague and an injunction enjoining the Defendants from enforcing Public Chapter No. 1032's unconstitutionally vague "recruit[ment]" prohibition, the Plaintiffs' intended advocacy about legal out-of-state abortion care and legal medication abortion care will expose the Plaintiffs to a credible threat of prosecution.

<u>CLAIM #2: 42 U.S.C. § 1983—VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS (CONTENT- AND VIEWPOINT-BASED SPEECH DISCRIMINATION)</u>

58. The Plaintiffs incorporate and reallege the foregoing allegations as if fully set forth herein.

59. Public Chapter No. 1032's "recruit[ment]" prohibition criminalizes, among other things, pure speech.

60. Public Chapter No. 1032's "recruit[ment]" prohibition criminalizes, among other things, pure speech based on its content.

61. Public Chapter No. 1032's "recruit[ment]" prohibition is not limited to speech that is integral to, or that is intended to bring about, unlawful conduct. *Cf. United States v. Hansen*, 599 U.S. 762, 783 (2023) ("To the extent that clause (iv) reaches any speech, it stretches no further than speech integral to unlawful conduct. . . . Speech intended to bring about a particular unlawful act has no social value; therefore, it is unprotected.").

62. Instead, by applying to "recruit[ment]" for the purpose of: (1) procuring an abortion "regardless of where [an] abortion is to be procured" (including in jurisdictions where abortion care is legal) and (2) "regardless of where [an] abortion-inducing drug is

obtained" (including legally), Public Chapter No. 1032's "recruit[ment]" prohibition criminalizes—and it is intended to criminalize—pure speech about *legal* abortion care.

63. Moments before the bill that became Public Chapter No. 1032 passed the Tennessee House of Representatives, the sponsor of Public Chapter No. 1032 asserted, in response to a specific request for clarification about the meaning of Public Chapter No. 1032's "recruit[ment]" prohibition, that it would criminalize Representative Behn's pure speech.

64. Whatever "recruit" means, as used in Public Chapter No. 1032, Tennessee law does *not* criminalize recruiting unemancipated minors for the purpose of *forgoing* legal abortion care.

65. Whatever "recruit" means, as used in Public Chapter No. 1032, Tennessee law *does* criminalize recruiting unemancipated minors for the purpose of *procuring* legal abortion care.

66. Public Chapter No. 1032's "recruit[ment]" prohibition thus criminalizes speech based on the viewpoint the speaker expresses, thereby favoring the Tennessee government's anti-abortion views while criminalizing opposing advocacy.

67. As a result, Public Chapter No. 1032's content- and viewpoint-based "recruit[ment]" prohibition is presumptively unconstitutional on its face.

68. No compelling governmental interest supports Public Chapter No. 1032's recruit[ment]" prohibition.

69. Public Chapter No. 1032's recruit[ment]" prohibition is not the least restrictive means of furthering any compelling governmental interest.

70. Public Chapter No. 1032's recruit[ment]" prohibition is fatally overinclusive, criminalizing more speech than is necessary to further any compelling

governmental interest.

71. Public Chapter No. 1032's recruit[ment]" prohibition is simultaneously fatally underinclusive, giving waivers to some speakers (including any non-adult) while denying them to others. *Cf. Thomas v. Chicago Park Dist.*, 534 U.S. 316, 325 (2002) ("Granting waivers to favored speakers (or, more precisely, denying them to disfavored speakers) would of course be unconstitutional[.]"); *Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 194 (1999) ("[D]ecisions that select among speakers conveying virtually identical messages are in serious tension with the principles undergirding the First Amendment.").

72. Apart from its facial invalidity, Public Chapter No. 1032 is unconstitutional as applied to the Plaintiffs' intended speech.

73. Absent a declaration that Public Chapter No. 1032's "recruit[ment]" prohibition violates the Plaintiffs' freedom of speech and an injunction enjoining the Defendants from enforcing Public Chapter No. 1032's "recruit[ment]" prohibition against the Plaintiffs, the Plaintiffs' intended advocacy about lawful out-of-state abortion care and medication abortion care will expose the Plaintiffs to a credible threat of prosecution.

CLAIM #3: 42 U.S.C. § 1983—VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS
(UNCONSTITUTIONAL OVERBREADTH)

74. The Plaintiffs incorporate and reallege the foregoing allegations as if fully set forth herein.

75. Under the overbreadth doctrine, if a "statute 'prohibits a substantial amount of protected speech' relative to its 'plainly legitimate sweep,' then society's interest in free expression outweighs its interest in the statute's lawful applications, and a court will hold the law facially invalid." *Hansen*, 599 U.S. at 770.

76. By expressly providing that its criminal prohibition applies to "recruit[ment]" for the purpose of: (1) procuring an abortion "regardless of where [an] abortion is to be procured" (including in jurisdictions where abortion care is legal) and (2) "regardless of where [an] abortion-inducing drug is obtained" (including legally), Public Chapter No. 1032 criminalizes a great deal of pure speech about legal abortion care.

77. Supporting and advocating for legal abortion care is protected speech.

78. Criminalizing support and advocacy for legal abortion care is unconstitutional.

79. Public Chapter No. 1032's "recruit[ment]" provision prohibits a substantial amount of protected speech relative to its plainly legitimate sweep.

80. The unconstitutional applications of Public Chapter No. 1032's "recruit[ment]" provision are "realistic, not fanciful." Indeed, the unconstitutional applications of Public Chapter No. 1032's "recruit[ment]" provision are the heart of the law.

81. The unconstitutional applications of Public Chapter No. 1032's "recruit[ment]" provision are substantially disproportionate to the statute's lawful sweep.

82. The unconstitutional applications of Public Chapter No. 1032's "recruit[ment]" provision are intended by and integral to the law.

83. For these reasons, the Plaintiffs are entitled to obtain the "strong medicine" of facial invalidation of Public Chapter No. 1032's "recruit[ment]" provision to vindicate the rights of the silenced as well as society's broader interests in hearing them speak.

\* \* \*

84. The Plaintiffs' Declarations verifying the truth of the above allegations are attached to this Verified Complaint as **Ex. 7** (Decl. of Rachel Welty) and **Ex. 8** (Decl. of

Aftyn Behn).

## VI.  PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray for the following relief:

1. That proper process issue and be served on the Defendants, and that the Defendants be required to appear and answer this Complaint within the time required by law.

2. That Section 1 of Public Chapter No. 1032 be declared unconstitutional.

3. That the Defendants be permanently enjoined from enforcing Section 1 of Public Chapter No. 1032.

4. That the Plaintiffs be awarded their reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988(b).

5. That the Plaintiffs be awarded all further relief to which they are entitled.

Respectfully submitted,

/s/ Daniel A. Horwitz
DANIEL A. HORWITZ, BPR #032176
MELISSA DIX, BPR #038535
SARAH L. MARTIN, BPR #037707
HORWITZ LAW, PLLC
4016 WESTLAWN DR.
NASHVILLE, TN 37209
daniel@horwitz.law
melissa@horwitz.law
sarahmartin1026@gmail.com
(615) 739-2888

*Counsel for Plaintiffs*