## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| RACHEL WELTY and | § | |
| AFTYN BEHN, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Case No. 3:24-cv-00768 |
| | § | |
| BRYANT C. DUNAWAY, | § | |
| JASON LAWSON, | § | |
| JENNINGS H. JONES, | § | |
| ROBERT J. CARTER, | § | |
| RAY WHITLEY, ROBERT J. NASH, | § | |
| GLENN FUNK, STACEY EDMONSON, | § | |
| BRENT COOPER, RAY CROUCH, and | § | |
| HANS SCHWENDIMANN, | § | |
| | § | |
| *Defendants.* | § | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

## I.  INTRODUCTION

When Idaho enacted Idaho Code Annotated § 18-623—a law substantially similar to the one challenged here—a federal district court preliminarily enjoined it as both a content-based and unconstitutionally vague speech restriction.  *See Matsumoto v. Labrador*, No. 1:23-CV-00323-DKG, 2023 WL 7388852, at *18–22 (D. Idaho Nov. 8, 2023) ("The Court finds Idaho Code Section 18-623 is a content-based regulation of protected speech and expression. . . .  In particular, the statute's restriction on 'recruiting' squarely quashes Plaintiffs' speech and expression about abortion as a viable and legal reproductive option. . . .  [T]he Court finds Plaintiffs have shown a likelihood of success

-1-

on their Fourteenth Amendment claim that the statute fails to provide a reasonable person with fair notice of what conduct is forbidden and what activities are lawful, and allows for arbitrary enforcement.") (internal citations omitted).

Tennessee Public Chapter No. 1032 presents an even easier case. Unlike section 18-623—which incorporated "the intent to conceal an abortion from the parents or guardian of a pregnant, unemancipated minor" as an essential element—Public Chapter No. 1032 contains no such requirement. *See* Doc. 1-1. Instead, an adult who intentionally "recruits, harbors, or transports" a pregnant unemancipated minor—including a victim of rape or incest—within Tennessee for the purpose of procuring a *legal* abortion out-of-state or a *legal* abortion-inducing drug commits a criminal offense regardless of any intent to conceal the assistance from the minor's parents. *See id.* at 1. Thus, one who helps a teenage victim of rape or incest obtain a legal abortion alone—precisely the work and advocacy Plaintiff Rachel Welty has done for years and wishes to continue doing, *see* Doc. 1 at ¶¶ 12–23—commits a criminal offense that "shall be punished by imprisonment for eleven (11) months and twenty-nine (29) days." Doc. 1-1 at 1. Indeed, according to Public Chapter No. 1032's primary House sponsor, even pure speech that is not directed at any specific person—like Representative Behn's statement that she "welcome[s] the opportunity to take a young person out of state who wants to have an abortion even if it lands me in jail"—should result in a criminal prosecution under Public Chapter No. 1032's "recruit[ment]" prohibition. *See* Doc. 1 at ¶¶ 36–41.

What "recruits" means—as used in Public Chapter No. 1032—is undefined, though. Further, despite being susceptible to many different definitions and carrying serious criminal consequences, the Defendants have refused to clarify its meaning. *See* Doc. 1-4; Doc. 1 at ¶ 28.

Regardless of how "recruits" is defined, however, Tennessee Public Chapter No. 1032 criminalizes pure speech based on its content and the viewpoint that a speaker expresses. That renders it presumptively unconstitutional, and the Defendants cannot meet their burden of proving that the law is the least restrictive means of furthering any compelling governmental interest. Further, because Public Chapter No. 1032 prohibits a substantial amount of protected speech relative to its legitimate sweep, the statute is unconstitutionally overbroad.

For all of these reasons, this Court should preliminarily enjoin the Defendants from enforcing Public Chapter No. 1032, which "takes effect July 1, 2024[.]" *See* Doc. 1-1 at 2. This Court should also issue a Temporary Restraining Order that temporarily restrains the Defendants from enforcing Section 1 of Public Chapter No. 1032 against the Plaintiffs pending resolution of the Plaintiffs' claim for a preliminary injunction.

## II. FACTS

### A. PLAINTIFF RACHEL WELTY

Plaintiff Rachel Welty is an outspoken and unapologetic advocate for safe and healthy access to abortion care. *See* Doc. 1 at ¶ 12. In her role as an advocate for safe and healthy access to abortion care, Ms. Welty has on many occasions participated in informational campaigns and distributed literature about abortion access, including how to access legal abortion-inducing drugs. *Id.* at ¶ 13; *see also* Doc. 1-2. Most of Ms. Welty's advocacy is concentrated in the Middle Tennessee area, including in each of the Defendants' judicial districts. Doc. 1 at ¶ 14. Ms. Welty is also a member of an abortion fund that provides resources to clients who need safe and healthy access to legal abortion medication and legal out-of-state abortion care that they can no longer obtain in Tennessee. *Id.* at ¶ 15. Ms. Welty's advocacy for safe and healthy access to legal abortion

-3-

care is not hidden, and it is not intended to be. *Id.* at ¶ 16. Ms. Welty advocates—accurately—that "'[a]bortion is safe, common, and normal[.]'" *Id.* at ¶ 17.

Ms. Welty also advocates for and helps facilitate Tennesseans' access to legal abortion care, including out-of-state abortion care and abortion-inducing drugs. *Id.* at ¶ 18. Her advocacy is not limited to emancipated minors or to Tennesseans who happen to be over the age of 18, and it is not intended to be. *Id.* at ¶ 19. Ms. Welty—an attorney—is well-known in Tennessee for helping pregnant, unemancipated minors receive access to legal abortion care, having handled "'judicial bypass'" representations for years before that legal avenue to abortion care was eliminated. *See id.* at ¶ 20 (citing Doc. 1-3, Paige Pfleger, *Tennessee teens can no longer seek judicial bypass for abortions*, NPR (Sep. 9, 2022), [https://www.npr.org/2022/09/09/1122123601/tennessee-teens-can-no-longer-seek-judicial-bypass-for-abortions](https://www.npr.org/2022/09/09/1122123601/tennessee-teens-can-no-longer-seek-judicial-bypass-for-abortions) (discussing Ms. Welty's work helping young teens—many of whom were victims of rape and incest—obtain judicial bypasses to access abortion care)). As a result of that work, Ms. Welty still receives calls from pregnant, unemancipated minors who want assistance accessing legal abortion care but do not have parental consent to access it. *Id.* at ¶ 21. Ms. Welty has historically helped those clients access legal abortion care. *Id.* at ¶ 22. Ms. Welty would also like to continue helping pregnant, unemancipated minors access legal abortion care. *Id.* at ¶ 23.

Given the foregoing, in anticipation of Public Chapter No. 1032 taking effect, Ms. Welty developed serious concerns that the law—which directly affects her day-to-day operations—would criminalize her advocacy and subject her to civil wrongful death liability. *Id.* at ¶ 24. Thus, Ms. Welty sought reasonable notice of what Public Chapter No. 1032 prohibits from the Defendants. *Id.* at ¶ 25. In particular, on June 6, 2024, Ms. Welty—through counsel—sent a letter to the Defendants regarding Public Chapter No.

-4-

1032's "'recruit[ment]'" prohibition. *See id.* at ¶ 26 (quoting Doc. 1-4). Ms. Welty specifically asked the Defendants "'to please define the proscribed behavior with sufficient particularity to provide a person of ordinary intelligence with reasonable notice of the conduct that is prohibited.'" *Id.* (quoting Doc. 1-4 at 2). Ms. Welty asked for a response from the Defendants by 4:30 p.m. CST on June 20, 2024. *Id.* at ¶ 27. None of the Defendants responded. *Id.* at ¶ 28.

Through counsel, Ms. Welty also expressed to the Defendants her "'significant concerns that Public Chapter No. 1032 is constitutionally infirm.'" *Id.* at ¶ 29 (quoting Doc. 1-4 at 2). In particular, Ms. Welty noted:

> Even setting aside vagueness issues, any reasonable interpretation of the law appears to criminalize pure speech and *advocacy*—a viewpoint-based speech restriction. Worse: the law appears to criminalize advocating for and facilitating access to *legal* abortion care, including abortion care provided out-of-state in compliance with the laws of sovereign jurisdictions.

*Id.* (quoting Doc. 1-4 at 3).

Based on these infirmities, Ms. Welty asked each Defendant to "'disavow all enforcement of Public Chapter No. 1032's "recruit[ment]" prohibition against Ms. Welty once the law takes effect.'" *Id.* at ¶ 30 (quoting Doc. 1-4 at 3). None of the Defendants disavowed enforcement of Public Chapter No. 1032's "recruit[ment]" prohibition against Ms. Welty, however. *Id.* at ¶ 31.

The scope of Public Chapter No. 1032's "recruit[ment]" prohibition also gives rise to additional criminal liability well beyond its terms, including for related inchoate offenses like criminal attempt, solicitation, and conspiracy, *see* Tenn. Code Ann. § 39-12-107(a)–(c), and for additional crimes like criminal responsibility, *see* Tenn. Code Ann. § 39-11-402(1)–(3). *Id.* at ¶ 32. Thus, unless Public Chapter No. 1032's "recruit[ment]" prohibition is declared unconstitutional and enjoined, Ms. Welty cannot safely continue

-5-

her advocacy for safe and healthy access to legal abortion care without risking criminal prosecution. *Id.* at ¶ 33. Ms. Welty's fear of being subjected to criminal prosecution for violating Public Chapter No. 1032's recruitment prohibition if she does not restrict her speech is both objectively and subjectively credible. *Id.* at ¶ 34. Especially when paired with the availability of civil enforcement by private parties, the criminal nature of the threat that Ms. Welty faces—a lengthy mandatory-minimum jail sentence following a criminal charge that may be initiated by any law enforcement officer or by an individual citizen through Tennessee's citizen grand jury process—significantly heightens the risk of chilled expression. *Id.* at ¶ 35.

B.     PLAINTIFF AFTYN BEHN

Plaintiff Aftyn Behn is an elected Representative of the Tennessee General Assembly. *Id.* at ¶ 36. Before the bill that ultimately became Public Chapter No. 1032 was considered for a final floor vote, Representative Behn posted publicly in opposition to the bill, pledging to "'exercise [her] right to publicly share information about how to seek an abortion which could be considered illegal under this law.'" *Id.* at ¶ 37 (quoting Doc. 1-5 at 4). Representative Behn further stated that she "'welcome[s] the opportunity to take a young person out of state who wants to have an abortion even if it lands me in jail.'" *Id.* at ¶ 38 (quoting Doc. 1-5 at 5).

During the Tennessee House of Representatives' discussion of the bill that ultimately became Public Chapter No. 1032, another representative sought clarification about the meaning of "'recruit[ment]'" under the bill. *See id.* at ¶ 39 (quoting Doc. 1-6 at 20:9–12 ("Mr. Sponsor, I would like to ask you, could you explain in the bill where it talks about an ado -- an adult recruiting these minors, could you explain what that would look like, please?")). On the Tennessee House floor, the primary sponsor of the bill answered

-6-

the representative's question as follows:

> REPRESENTATIVE ZACHARY: "[U]nfortunately, there's even a member of this body that recently tweeted out, 'I welcome the opportunity to take a young person out of state who wants to have an abortion, even if it lands me in jail.' . . .
>
> REPRESENTATIVE ZACHARY: And so answering the question of recruitment, I'm answering the question of recruitment. Representative, that is what recruitment looks like.

*Id.* at ¶ 40 (quoting Doc. 1-6 at 21:9–17).

According to the sponsor of Public Chapter No. 1032, merely stating: "I welcome the opportunity to take a young person out of state who wants to have an abortion, even if it lands me in jail"—even when that statement was not directed to any specific person— is a criminal violation of Public Chapter No. 1032's "recruit[ment]" prohibition. *Id.* at ¶ 41. Representative Behn wants to continue her advocacy for young people who need legal abortion care, but, beginning July 1, 2024, Representative Behn cannot do so safely without risking criminal prosecution. *Id.* at ¶ 42. Representative Behn's fear of being subjected to prosecution for violating Public Chapter No. 1032's recruitment prohibition is objectively and subjectively credible. *Id.* at ¶ 43. Further, when paired with the availability of civil enforcement by private parties, the criminal nature of the threat that Representative Behn faces—a lengthy mandatory-minimum jail sentence following a criminal charge that may be initiated by any law enforcement officer or by an individual citizen through Tennessee's citizen grand jury process—significantly heightens the risk of chilled expression. *Id.* at ¶ 44.

As an elected official and legislator, Representative Behn's chilled expression regarding a matter of obvious public importance is especially destructive. *Id.* at ¶ 45. Chilling Representative Behn's speech interferes with her role and duty as an elected

official and simultaneously violates her constituents' right to hear and receive information from her. *Id.* at ¶ 45. Based on the credible threat of Public Chapter No. 1032 being enforced against her, Ms. Behn cannot safely express herself on matters of current public importance. *Id.* at ¶ 46.

## III.  LEGAL STANDARD

### A.  TEMPORARY RESTRAINING ORDER

Rule 65(b)(1) of the Federal Rules of Civil Procedure provides that:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
>> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>>
>> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

*Id.*

"In determining whether to grant a temporary restraining order ('TRO'), the Court considers the same four factors applicable to a motion for preliminary injunction" addressed below. *See Dinter v. Miremami*, 627 F. Supp. 3d 726, 730 (E.D. Ky. 2022) (citing *McGirr v. Rehme*, 891 F.3d 603, 610 (6th Cir. 2018)). "Though the standard for a TRO is the same as a preliminary injunction, there is increased emphasis on irreparable harm." *Id.* (citing *ABX Air, Inc. v. Int'l Bhd. of Teamsters, Airline Div.*, 219 F. Supp. 3d 665, 670 (S.D. Ohio 2016); *New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977)).

Local Rule 65.01 separately requires movants to:

1.  Make a written motion for a TRO separate from the complaint commencing the case, *see* L.R. 65.01(a);

2.      Ensure that the motion for a TRO is accompanied by a separately filed affidavit or verified written complaint, a memorandum of law, and a proposed order, *see* L.R. 65.01(b);

3.      Strictly comply with Rule 65 of the Federal Rules of Civil Procedure, *see* L.R. 65.01(c); and

4.      Contact the clerk if a hearing is requested, *see* L.R. 65.01(d).

"Under Federal Rule of Civil Procedure 65, the purpose of a temporary restraining order is merely to preserve the relative positions of the parties—i.e., the status quo—until the Court can hold an adversarial hearing for a preliminary injunction." *Blount Pride, Inc. v. Desmond*, 690 F. Supp. 3d 796, 802 (E.D. Tenn. 2023) (citing *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974)). "The four factors generally ought 'to be balanced against one another and should not be considered prerequisites to the grant' of a temporary restraining order." *Id.* (quoting *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000)). "When the Court is able to determine the propriety of a temporary restraining order by relying on fewer than all four factors, it may do so." *Id.*

**B.      PRELIMINARY INJUNCTION**

When deciding whether to issue a preliminary injunction:

> [C]ourts must examine four factors . . . : (1) whether the movant has demonstrated a substantial likelihood of success on the merits, (2) whether the movant will suffer irreparable injury absent injunction, (3) whether a preliminary injunction would cause substantial harm to others, and (4) whether the public interest will be served by an injunction.

*Flight Options, LLC v. Int'l Bhd. of Teamsters, Loc. 1108*, 863 F.3d 529, 539–40 (6th Cir. 2017); *see also Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001). "[T]he four considerations applicable to preliminary injunction decisions are factors to be balanced,

not prerequisites that must be met." *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985). Likelihood of success on the merits "is the most important" factor, *see Jones v. Caruso*, 569 F.3d 258, 277 (6th Cir. 2009), though it is not necessarily dispositive, *see O'Toole v. O'Connor*, 802 F.3d 783, 792 (6th Cir. 2015). Where—as here—the Government is the opposing party, the third and fourth factors of the preliminary injunction inquiry "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009); *see also Daunt v. Benson*, 956 F.3d 396, 422 (6th Cir. 2020) ("[T]he public-interest factor 'merge[s]' with the substantial-harm factor when the government is the defendant[.]").

## IV. ARGUMENT

### A.  THE PLAINTIFFS ARE SUBSTANTIALLY LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS.

As one district court has already determined under analogous circumstances, the Plaintiffs are substantially likely to succeed on the merits of their claims. *See Matsumoto*, 2023 WL 7388852, at \*18–22. Straightforward First Amendment law compels this conclusion.

### 1.  Public Chapter No. 1032's "recruit[ment]" prohibition is unconstitutionally vague.

"The void-for-vagueness doctrine requires that [a] statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *United States v. Kerns*, 9 F.4th 342, 351 (6th Cir. 2021) (quoting *United States v. Farah*, 766 F.3d 599, 614 (6th Cir. 2014)) (alteration in original). "To withstand a facial challenge [that a statute is unconstitutionally vague], an enactment must define the proscribed behavior with sufficient particularity to provide a person of ordinary intelligence with reasonable notice of prohibited conduct and to encourage non-arbitrary

-10-

enforcement of the provision." *Am. Booksellers Found. for Free Expression v. Strickland*, 601 F.3d 622, 627 (6th Cir. 2010) (quoting *Belle Maer Harbor v. Charter Twp. of Harrison*, 170 F.3d 553, 557 (6th Cir. 1999)) (alterations in original).

Further, when—as here—"a statute 'interferes with the right of free speech . . ., a more stringent vagueness test should apply.'" *Holder v. Humanitarian L. Project*, 561 U.S. 1, 19 (2010) (quoting *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982) ("If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply."). The standard of certainty is also even higher still when, as here, a speaker risks *criminal* punishment. *See Winters v. New York*, 333 U.S. 507, 515 (1948) ("The standards of certainty in statutes punishing for offenses is higher than in those depending primarily upon civil sanction for enforcement. The crime 'must be defined with appropriate definiteness.'") (cleaned up); *see also Maldonado v. Morales*, 556 F.3d 1037, 1045 (9th Cir. 2009) ("Because of the nature of criminal sanctions, '[t]he standards of certainty in statutes punishing for offenses is higher than in those depending primarily on civil sanction for enforcement.'") (quoting *Winters*, 333 U.S. at 515); *Hunt v. City of Los Angeles*, 638 F.3d 703, 712 (9th Cir. 2011) ("[W]here criminal sanctions are involved and/or the law implicates First Amendment rights such as here, a 'more demanding' standard of scrutiny applies.").

With these considerations in mind, Public Chapter No. 1032's "recruit[ment]" prohibition is unconstitutionally vague. The word "recruits," as used in Public Chapter No. 1032, is not defined in Public Chapter No. 1032. The word "recruits" is also susceptible to a wide range of potential meanings, any of which would criminalize some

amount of pure speech—including, for instance, mere encouragement or persuasion.[1] The scope of Public Chapter No. 1032's "recruit[ment]" prohibition gives rise to additional criminal liability beyond its terms, too, including for related inchoate offenses like criminal attempt, solicitation, and conspiracy, *see* Tenn. Code Ann. § 39-12-107(a)–(c), and for additional crimes like criminal responsibility, *see* Tenn. Code Ann. § 39-11-402(1)–(3).

Because it is impossible to know the meaning of the word "recruits," as used in

---

[1] *See, e.g.*, Tenn. Op. Att'y Gen. No. 07-64 (May 10, 2007) ("[T]he plain meaning of 'recruit' . . . is synonymous with 'induce or encourage to come into this state for the purpose of employment' as employed in SB202[.]"); **Ex. 1**, *United States v. Withers*, No. 3:16-cr-00005-wmc, Doc. 126-2, at 12 (W.D. Wis. Apr. 28, 2017) ("***To recruit means to persuade someone to join in or to help with some activity***."); *In re Pro. Home Health Care, Inc.*, 159 F. App'x 32, 37 (10th Cir. 2005) ("The dictionary definition of 'recruit' means 'to secure the services of . . . [or to] enlist new members.' As such, the construction of 'recruit' most likely correct under Colorado law requires a direct request or plea.") (internal citation omitted); *Contreras v. Mt. Adams Orchard Corp.*, 744 F. Supp. 1007, 1007 (E.D. Wash. 1990) ("[T]he term 'recruit' . . . shall be interpreted as meaning 'to hire or otherwise obtain or secure the services of,' and shall include all pre-employment discussions that relate to a worker's employment."); *Escobar v. Baker*, 814 F. Supp. 1491, 1503 (W.D. Wash. 1993) ("'[R]ecruitment' includes 'indirect recruitment.'"); *id.* at 1504 ("'Recruiting' encompasses not only direct contacts with prospective workers but also indirect efforts to attract or solicit workers for agricultural employment."); *Atmel Corp. v. Vitesse Semiconductor Corp.*, 30 P.3d 789, 793 (Colo. App. 2001), ("'Recruit' means to 'hire or otherwise obtain or provide services . . . secure the services of.'" (quoting Webster's Third New International Dictionary 1899 (1986))), *abrogated on other grounds by Ingold v. AIMCO/Bluffs, L.L.C. Apartments*, 159 P.3d 116 (Colo. 2007); *State v. Cartee*, 577 N.W.2d 649, 652 (Iowa 1998) ("The court instructed the jury that 'recruit' means 'to seek out a person to perform a specific task or service.'" (quoting Webster's Ninth New Collegiate Dictionary 985 (1986) ("recruit" defined as "to secure the services of: ENGAGE, HIRE"))); *Commonwealth v. Dabney*, 90 N.E.3d 750, 764 (Mass. 2018) ("[T]o 'recruit' means to 'hire or otherwise obtain to perform services,' to 'secure the services of' another, to 'muster,' 'raise,' or 'enlist.' Such recruitment does not require force or coercion.") (internal citation omitted); *Sandoval v. Rizzuti Farms, Ltd.*, 656 F. Supp. 2d 1265, 1277 (E.D. Wash. 2009) ("[I]ndirect recruitment includes situations where the farm 'puts out the word' that work is available and workers respond by showing up at a farm to work"); *State v. Gregg*, 834 N.W.2d 871 (Iowa Ct. App. 2013) ("The district court instructed the jury that 'recruit' means 'to seek out a person to perform a specific task or service.'")

-12-

Public Chapter No. 1032, just by reading the statute, Ms. Welty contacted the Defendants and sought reasonable notice of what Public Chapter No. 1032 prohibits. *See* Doc. 1 at ¶¶ 26–27; *see also* Doc. 1-4. "None of the Defendants responded." Doc. 1 at ¶ 28. "None of the Defendants disavowed enforcement of Public Chapter No. 1032's 'recruit[ment]' prohibition against Ms. Welty[,]" either. *Id.* at ¶ 31.

Under these circumstances, the Plaintiffs are substantially likely to succeed on the merits of their claim that the word "recruits," as used in Public Chapter No. 1032, is unconstitutionally vague. Based on both the undefined nature of the word "recruits," as used in Public Chapter No. 1032, and the Defendants' refusal to clarify their own interpretations of this criminal prohibition before Public Chapter No. 1032 takes effect, Public Chapter No. 1032 neither defines the proscribed behavior with sufficient particularity to provide a person of ordinary intelligence with reasonable notice of prohibited conduct nor encourages non-arbitrary enforcement of the provision. There is also good reason to believe that Public Chapter No. 1032's "recruit[ment]" provision prohibits pure generalized advocacy like Representative Behn's statement that "[she] welcome[s] the opportunity to take a young person out of state who wants to have an abortion, even if it lands [her] in jail," given that Public Chapter No. 1032's main House sponsor *said so contemporaneously with the bill being enacted and just before a final House floor vote. See* Doc. 1 at ¶¶ 37–41.

Given the foregoing, Public Chapter No. 1032's "recruit[ment]" prohibition is unconstitutionally vague and contravenes the Fourteenth Amendment's prohibition against vague laws. *Cf. Matsumoto*, 2023 WL 7388852, at *21 ("Here, Idaho Code Section 18-623 fails to provide fair notice or ascertainable standard of what is and what is not abortion trafficking. . . . Most notably, as relevant to Plaintiff's intended activities, there

-13-

is no definition for what constitutes 'recruiting.'").  That the uncertain reach of Public Chapter No. 1032's "recruit[ment]" prohibition subjects speakers to the credible threat of *criminal* prosecution and a lengthy mandatory-minimum jail sentence also raises the stakes so dramatically that "definiteness" of meaning is essential here.  *See Winters*, 333 U.S. at 515 ("The standards of certainty in statutes punishing for offenses is higher than in those depending primarily upon civil sanction for enforcement.  The crime 'must be defined with appropriate definiteness.'").  Given its absence, though, the Plaintiffs are substantially likely to succeed on the merits of their claim that Public Chapter No. 1032's "recruit[ment]" prohibition is unconstitutionally vague.

> **2.**    **Public Chapter No. 1032's "recruit[ment]" provision is a presumptively unconstitutional content- and viewpoint-based speech restriction.**

Public Chapter No. 1032's "recruit[ment]" prohibition criminalizes, among other things, speech.  It also targets speech based on its communicative content: namely, speech about procuring an abortion or obtaining an abortion-inducing drug.   As such, Public Chapter No. 1032's "recruit[ment]" prohibition is a content-based speech regulation.  *See Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (A speech regulation is content-based if it "target[s] speech based on its communicative content.").  Public Chapter No. 1032's "recruit[ment]" prohibition is thus "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id.*

Beyond engaging in mere content-discrimination, though, Public Chapter No. 1032's "recruit[ment]" prohibition also restricts speech based on a speaker's *viewpoint*. Whatever "recruit" means, as used in Public Chapter No. 1032, the law does *not* criminalize recruiting unemancipated minors for the purpose of *forgoing* legal abortion

-14-

care. But it *does* criminalize recruiting unemancipated minors for the purpose of *procuring* legal abortion care. Thus, Public Chapter No. 1032 targets speech based not only on the subject matter involved, but also based on the viewpoint a speaker expresses.

Viewpoint discrimination—which is regarded as "an egregious form of content discrimination[,]" *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995)—is presumptively forbidden. *See Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 804 (1984) ("[T]he First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others.") (collecting cases). Further, regardless of the type of forum involved, viewpoint discrimination triggers strict scrutiny. *See Ne. Pa. Freethought Soc'y v. Cty. of Lackawanna Transit Sys.*, 938 F.3d 424, 436 (3d Cir. 2019) ("[V]iewpoint discrimination is impermissible in any forum." (citing *Minnesota Voters All. v. Mansky*, 585 U.S. 1, 10 (2018); *Matal v. Tam*, 582 U.S. 218, 243–44 (2017); *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 111–12 (2001); *Rosenberger*, 515 U.S. at 829)). Thus, "while many cases turn on which type of 'forum' is implicated, the important point here is that viewpoint discrimination is impermissible in them all." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1936 (2019) (Sotomayor, J., dissenting) (citing *Good News Club*, 533 U.S. at 106).

Given the foregoing, Public Chapter No. 1032's content- and viewpoint-based "recruit[ment]" prohibition is presumptively unconstitutional on its face. It also is not the least restrictive means of furthering any compelling governmental interest.

To begin, to the extent that the Government asserts some compelling interest in limiting speech that is integral to, or that is intended to bring about, unlawful conduct, the Plaintiffs note that Public Chapter No. 1032's "recruit[ment]" prohibition is not

-15-

limited to such speech. *Cf. United States v. Hansen*, 599 U.S. 762, 783 (2023) ("To the extent that clause (iv) reaches any speech, it stretches no further than speech integral to unlawful conduct. . . . Speech intended to bring about a particular unlawful act has no social value; therefore, it is unprotected."). Instead, by applying to "recruit[ment]" for the purpose of: (1) procuring an abortion "regardless of where [an] abortion is to be procured" (including in jurisdictions where abortion care is legal) and (2) "regardless of where [an] abortion-inducing drug is obtained" (including legally), *see* Doc. 1-1 at 1, Public Chapter No. 1032's "recruit[ment]" prohibition criminalizes—and it is intended to criminalize— speech about *legal* abortion care. Under these circumstances, Public Chapter No. 1032's "recruit[ment]" prohibition is fatally overinclusive, criminalizing far more speech than is necessary to further any compelling governmental interest in proscribing speech "that is integral to, or that is intended to bring about, unlawful conduct." *Hansen*, 599 U.S. at 783. Tennessee has no lawful interest—much less a compelling one—in criminalizing speech about legal abortion care based on a speaker's viewpoint, either.

At the same time, Public Chapter No. 1032's "recruit[ment]" prohibition is fatally *underinclusive*. For instance, assuming for the sake of argument that the Government has some compelling interest in promoting parental rights and prohibiting recruitment of minors generally, that interest cannot plausibly be limited to the subject of abortion alone.

Further, whatever the State's asserted interest here, Public Chapter No. 1032 gives waivers to some speakers (including any non-adult) while denying them to others. *See* Doc. 1-1 at 1 (reflecting that the proscription applies only to "[a]n adult" and provides waivers for "[t]he parents or legal guardian of the unemancipated minor," "[a] person who has obtained the written, notarized consent of the unemancipated minor's parent or legal

guardian," "[a] common carrier transporting passengers in the course and scope of their business[,]" and "[a]n ambulance driver or operator and any corresponding emergency medical services personnel, as defined in § 68-140-302, acting within the course and scope of their duties."). Such speaker-based discrimination is "of course" unconstitutional. *See, e.g.*, *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 325 (2002) ("Granting waivers to favored speakers (or, more precisely, denying them to disfavored speakers) would of course be unconstitutional[.]"); *Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 194 (1999) ("[D]ecisions that select among speakers conveying virtually identical messages are in serious tension with the principles undergirding the First Amendment."). Thus, whatever the State's asserted interest in the provision, Public Chapter No. 1032's recruitment prohibition is fatally underinclusive as well.

For all of these reasons, the Plaintiffs are likely to succeed on the merits of their claims that Public Chapter No. 1032's recruitment prohibition—which must be *presumed* unconstitutional—is unconstitutional, both facially and as applied to the Plaintiffs' own intended speech.

### 3. Public Chapter No. 1032's "recruit[ment]" provision is unconstitutionally overbroad.

Under the overbreadth doctrine, if a "statute 'prohibits a substantial amount of protected speech' relative to its 'plainly legitimate sweep,' then society's interest in free expression outweighs its interest in the statute's lawful applications, and a court will hold the law facially invalid." *Hansen*, 599 U.S. at 770. Here, by expressly providing that its criminal prohibition applies to "recruit[ment]" for the purpose of (1) procuring an abortion "regardless of where [an] abortion is to be procured" (including in jurisdictions

-17-

where abortion care is legal), and (2) "regardless of where [an] abortion-inducing drug is obtained" (including legally), Public Chapter No. 1032 criminalizes a great deal of pure speech about legal abortion care that the Government has no lawful interest in criminalizing.

Simply put: Supporting and advocating for legal abortion care is protected speech. *See, e.g.*, *Matsumoto*, 2023 WL 7388852, at *8 ("Plaintiffs' activities aimed at providing information, support, and assistance about reproductive health options, including legal abortion services, to pregnant individuals constitute protected speech." (citing *Bigelow v. Virginia*, 421 U.S. 809, 824–25 (1975) (holding an advertisement providing information about legal abortion services available in other states was constitutionally protected speech))). As such, criminalizing support and advocacy for legal abortion care is unconstitutional. *Id.*

The unconstitutional applications of Public Chapter No. 1032's "recruit[ment]" provision are "realistic, not fanciful[,]" too. *See Hansen*, 599 U.S. at 770 ("To justify facial invalidation, a law's unconstitutional applications must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep."). Public Chapter No. 1032 expressly states that its provisions apply "regardless of where the abortion is to be procured"—including in jurisdictions where abortion is legal—and "regardless of where the abortion-inducing drug is obtained" (including legally). *See* Doc. 1-1 at 1. Under these circumstances, the unconstitutional applications of Public Chapter No. 1032's "recruit[ment]" provision are not some mere oversight. Instead, the unconstitutional applications of Public Chapter No. 1032's "recruit[ment]" provision *are the heart of the law*; they are expressly intended by it; and they are integral to it. Under these circumstances, then, the Plaintiffs are entitled to obtain the "strong medicine" of

-18-

facial invalidation of Public Chapter No. 1032's "recruit[ment]" provision "to vindicate the rights of the silenced, as well as society's broader interests in hearing them speak." *Hansen*, 599 U.S. at 770.

**B.** **THE PLAINTIFFS WILL SUFFER IRREPARABLE INJURY ABSENT PRELIMINARY RELIEF.**

"[I]t is well-settled that 'loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Thus, all First Amendment violations—even minimal ones—constitute "per se irreparable" injuries. *See G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1078–79 (6th Cir. 1994) ("Violations of First Amendment rights constitute *per se* irreparable injury.") (cleaned up); *see also Newsom v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989) ("The Supreme Court has unequivocally admonished that even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief."); *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cty.*, 274 F.3d 377, 400 (6th Cir. 2001) ("[T]he Supreme Court has recognized that even minimal infringement upon First Amendment values constitutes irreparable injury."); *Young v. Giles Cty. Bd. of Educ.*, 181 F. Supp. 3d 459, 465 (M.D. Tenn. 2015) ("Under case law applicable to free speech claims, the loss of First Amendment freedoms, for even minimal periods of time, is presumed to constitute irreparable harm.") (quotation omitted). Given the criminal nature of the threat that the Plaintiffs face and the fact that Public Chapter No. 1032 affects Plaintiff Welty's day-to-day operations and Plaintiff Behn's duties as an elected official, *see* Doc. 1 at ¶¶ 24, 45, the injury to the Plaintiffs here is also severe.

-19-

For these reasons, the second preliminary injunction factor weighs in the Plaintiffs' favor, too.

## C. <u>A PRELIMINARY INJUNCTION WOULD NOT CAUSE SUBSTANTIAL HARM TO OTHERS.</u>

Nor would granting the Plaintiffs a preliminary injunction harm the Defendants in any material way. Public Chapter No. 1032's "recruit[ment]" provision is presumptively unconstitutional, *see supra* at 14–17, and "[n]o substantial harm can be shown in the enjoinment of an unconstitutional policy." *Chabad of S. Ohio v. City of Cincinnati*, 233 F. Supp. 2d 975, 987 (S.D. Ohio 2002), *aff'd sub nom. Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427 (6th Cir. 2004) (citing *Deja Vu of Nashville, Inc.*, 274 F.3d at 400 ("[I]f the plaintiff shows a substantial likelihood that the challenged law is unconstitutional, no substantial harm to others can be said to inhere in its enjoinment.")). Thus, the third preliminary injunction factor weighs in the Plaintiffs' favor as well.

## D. <u>THE PUBLIC INTEREST WILL BE SERVED BY AN INJUNCTION.</u>

The public interest will be served by a preliminary injunction. Two reasons support this conclusion.

*First*, "it is always in the public interest to prevent the violation of a party's constitutional rights." *G & V Lounge, Inc.*, 23 F.3d at 1079. Accordingly, because the Plaintiffs have established a strong likelihood of success on the merits of their constitutional claims, the public interest favors granting them a preliminary injunction. *See id.; see also Young*, 181 F. Supp. 3d at 465 ("Because Plaintiff has established a strong likelihood that Defendants' prohibition of speech violates the First Amendment, the public interest also favors the issuance of a preliminary injunction."); *Chabad of S. Ohio*

*& Congregation Lubavitch*, 363 F.3d at 436 ("[T]he public interest is served by preventing the violation of constitutional rights.").

*Second*, when the First Amendment is at stake, it is not only the speaker's interests that are implicated; the First Amendment similarly protects the right of the public to "receive" information. *See, e.g.*, *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 757 (1976) ("[I]n *Kleindienst v. Mandel*, 408 U.S. 753, 762–763 (1972), we acknowledged that this Court has referred to a First Amendment right to 'receive information and ideas,' and that freedom of speech 'necessarily protects the right to receive.'") (cleaned up); *see also id.* ("There are numerous other expressions to the same effect in the Court's decisions.") (collecting cases).

That interest is especially important with respect to Representative Behn, an elected official from whom the public has a right to hear. As the U.S. Supreme Court has explained, "[t]he manifest function of the First Amendment in a representative government requires that legislators be given the widest latitude to express their views on issues of policy." *Bond v. Floyd*, 385 U.S. 116, 135–36 (1966). As such, "[t]he role that elected officials play in our society makes it all the more imperative that they be allowed freely to express themselves on matters of current public importance." *Wood v. Georgia*, 370 U.S. 375, 395 (1962). Thus, chilling Representative Behn's speech interferes with her role and duty as an elected official and simultaneously violates her constituents' right to hear and receive information from her.

For these reasons, the public interest will be advanced by granting preliminary relief, and the fourth and final factor of the preliminary injunction inquiry favors granting the Plaintiffs a preliminary injunction as well.

**E.**     <u>L<span style="font-variant:small-caps">OCAL</span> R<span style="font-variant:small-caps">ULE</span> 65.01</u>

Pursuant to Local Rule 65.01(b), the Plaintiffs' motion for a TRO is accompanied by a separately filed verified written complaint, *see* Doc. 1, this memorandum of law, and the proposed order attached here as **Exhibit 2**. Given the Plaintiffs' need for temporary relief by or before July 1, 2024, no hearing is requested on the Plaintiffs' application for a TRO. The Plaintiffs informed the Defendants' counsel in advance of filing of their intent to seek the relief sought here, however, and the Plaintiffs agree that a TRO should only issue after notice to the Defendants, whose counsel is being served with this filing contemporaneously.

### V. CONCLUSION

For the foregoing reasons, all four factors of the temporary restraining order and preliminary injunction inquiries favor issuing pre-judgment relief. Thus, pending a final adjudication of the merits of the Plaintiffs' claims, this Court should restrain and then preliminarily enjoin the Defendants from enforcing Section 1 of Public Chapter No. 1032.

Respectfully submitted,

/s/ Daniel A. Horwitz
DANIEL A. HORWITZ, BPR #032176
MELISSA DIX, BPR #038535
SARAH L. MARTIN, BPR #037707
HORWITZ LAW, PLLC
4016 WESTLAWN DR.
NASHVILLE, TN 37209
daniel@horwitz.law
melissa@horwitz.law
sarahmartin1026@gmail.com
(615) 739-2888

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of June, 2024, a copy of the foregoing and all exhibits and attachments were sent via CM/ECF, USPS Mail, and/or via email, to:

Steven J. Griffin
Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, TN 37202
Tel: (615) 741-8726
Steven.Griffin@ag.tn.gov

*Counsel for Defendants*

/s/ Daniel A. Horwitz_____
Daniel A. Horwitz, BPR #032176