# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| RACHEL WELTY and<br>AFTYN BEHN, | §<br>§<br>§ | |
| *Plaintiffs*, | §<br>§<br>§ | |
| v. | §<br>§ | Case No. 3:24-cv-00768 |
| BRYANT C. DUNAWAY,<br>JASON LAWSON,<br>JENNINGS H. JONES,<br>ROBERT J. CARTER,<br>RAY WHITLEY, ROBERT J. NASH,<br>GLENN FUNK, STACEY EDMONSON,<br>BRENT COOPER, RAY CROUCH, and<br>HANS SCHWENDIMANN, | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |
| *Defendants*. | §<br>§ | |

## PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

The Defendants oppose the Plaintiffs' motion for temporary and preliminary relief. Doc. 22. The Defendants do so unpersuasively, however, so the Plaintiffs' motion should be granted.

**A. <u>There is no strategic delay here.</u>** The Defendants assert that "[s]trategic delay"—which the Defendants characterize as "lengthy"—"bars Plaintiffs' emergency request for injunctive relief." *Id.* at 4–5. Under the circumstances, this is nonsense. The challenged statute at issue here was enacted into law on May 28, 2024. Doc. 1-1 at 3. By June 6, 2024, Plaintiff Welty had retained counsel and asked the Defendants to clarify its scope and disavow enforcement. Doc. 1-4. She asked them to do so by "June 20, 2024." *Id.* at 3. The Defendants declined. Thus, counsel drafted the Plaintiffs' Complaint and filed suit two business days later. *See* Doc. 1. All of this happened—as the Defendants concede—"before the Act even went into effect[.]" *See* Doc. 22 at 19.

That is not laches, or anything resembling it. The Defendants also argue out of both sides of their mouths, faulting the Plaintiffs, on the one hand, for waiting to sue until after their standing ripened and their injuries became certain through the Defendants' refusal to disavow enforcement and refusal to clarify the Act's vagueness problems, while suggesting, on the other hand, that the Plaintiffs should have sued before then. Criminalizing protected speech is not a game, though, and the Defendants' heads-I-win, tails-you-lose theory of temporary relief lacks legal support.

**B. <u>The Act is unconstitutional.</u>** The Defendants defend the Act's constitutionality. Doc. 22 at 8–17. They do so by mischaracterizing its terms, though. Most prominently, they assert that "culpability under the Act for 'recruit[ing]' attaches only when speech accompanies or seeks to induce a minor's obtaining a *criminal* abortion without parental consent," *id.* at 3 (emphasis added), even though the Act applies to *non*-criminal abortions that are performed elsewhere.

The Defendants also insist that "the company kept by 'recruits' significantly narrows its possible meanings." *Id.* at 10. It is difficult to understand how this can be true, given that: (1) the

-1-

word "recruits" necessarily encompasses speech while the same is not true of the words "harbors" and "transports[,]" and (2) the Act is written disjunctively such that they are all independent crimes. The Defendants concede that the term "recruits" is "susceptibil[e] to a wide array of possible meanings," too. Doc. 22 at 11. The Defendants then insist that "conduct-focused definitions are easy to find" (*id.*) *while proposing a speech-based example of criminal conduct. See id.* at 16 (asserting that "reaching out to and convincing a minor" is recruitment). The Defendants also fail to address—or even acknowledge—that their shifting definitions of a concededly ambiguous term are inconsistent with what the bill's sponsor said contemporaneously. *Cf. Tanyike v. United States*, 603 F. Supp. 3d 572, 577 (S.D. Ohio 2022) ("Where a statute is ambiguous, the Court may look to the legislative history to clarify the ambiguity.") (citing *Brilliance Audio, Inc. v. Haights Cross Communs., Inc*., 474 F.3d 365, 371-72 (6th Cir. 2007) (in turn citing *Garcia v. United States*, 469 U.S. 70, 76 n.3, 105 S. Ct. 479, 83 L.Ed.2d 472 (1984))).

The Defendants separately suggest that the Act criminalizes only *un*protected speech; specifically: "'Offers to engage in illegal transactions [that] are categorically excluded from First Amendment protection.'" Doc. 22 at 14. In so doing, they repeat the inaccurate claim that the Act only "prohibits recruiting an unemancipated minor 'for the purpose of' procuring an abortion that is illegal in Tennessee[,]" *id.* at 15, even though it applies to recruitment "regardless of where the abortion is to be procured" and "regardless of where the abortion-inducing drug is obtained[.]" *See* Doc. 1-1 at 1. Alternatively, the Defendants suggest that cases arising under the Act "can be prosecuted here even if the abortion itself" *is legal* and "takes place elsewhere." Doc. 22 at 15. The Defendants cite no case supporting that extraordinary proposition, though. *Id.* It also is "not especially difficult" to understand why it is wrong. *Cf. Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 346 (2022) (Kavanaugh, J., concurring) ("some of the other abortion-related legal

questions raised by today's decision are not especially difficult as a constitutional matter. For example, may a State bar a resident of that State from traveling to another State to obtain an abortion? In my view, the answer is no based on the constitutional right to interstate travel.").

In summary: Beyond criminalizing speech *uncertainly*, the Act criminalizes speech that is protected. It also does so based on its content and its viewpoint, which the Defendants do not contest. That renders the Act presumptively unconstitutional, *see* Doc. 19 at 14–17, but the Defendants have not attempted to meet their burden of establishing that it is the least restrictive means of furthering compelling state interests. Thus, Plaintiffs are likely to succeed on the merits.

**C.  Plaintiffs have standing.**  "Beyond chill, a variety of facts can demonstrate a credible threat of enforcement." *Fischer v. Thomas*, 52 F.4th 303, 307 (6th Cir. 2022). Sixth Circuit cases

> [H]ave highlighted four commonly recurring factors to consider: (1) Does the relevant prosecuting entity have a prior history of enforcing the challenged provision against the plaintiffs or others? (2) Has that entity sent warning letters to the plaintiffs regarding their conduct? (3) Does the challenged regulatory regime make enforcement easier or more likely? and (4) Did the prosecuting entity refuse to disavow enforcement of the challenged provision against the plaintiffs?

*Id.* (citing *Online Merchants Guild v. Cameron*, 995 F.3d 540, 550 (6th Cir. 2021) (recounting factors articulated in *McKay*, 823 F.3d at 869). "This isn't a laundry list; [plaintiffs] don't have to satisfy all the factors." *Id.* at 307–08. The factors also "are not exhaustive," *Online Merchants Guild*, 995 F.3d at 550, and here, the recency of the Act and its criminal provisions tip the scale.

1.  Recency of the enactment: It is true that the Defendants have not actually initiated a prosecution under the Act yet, presumably because they can't do so until July 1st. But the recency of the enactment alone makes the threat credible. *See, e.g., St. Paul Area Chamber of Com. v. Gaertner*, 439 F.3d 481, 486 (8th Cir. 2006) ("the threat of prosecution is greater under a statute enacted relatively recently."); *Minnesota Democratic-Farmer-Lab. Party by Martin v. Simon*, 970 N.W.2d 689, 696 (Minn. Ct. App. 2022) ("When analyzing whether a 'credible threat of

prosecution' exists, federal courts have considered the history of the statute's enforcement, as well as how recently it was enacted.") (collecting cases); *New Hampshire Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 15 (1st Cir. 1996) ("When dealing with pre-enforcement challenges to recently enacted (or, at least, non-moribund) statutes that facially restrict expressive activity by the class to which the plaintiff belongs, courts will assume a credible threat of prosecution in the absence of compelling contrary evidence.").

2. Criminal nature of the threat: "[T]he nature of the restrictions"—namely, whether a plaintiff "challenges criminal laws"—affects the pre-enforcement standing inquiry. *Kareem v. Cuyahoga Cnty. Bd. of Elections*, 95 F.4th 1019, 1025 (6th Cir. 2024). The reason is that "[t]he severity of criminal sanctions may well cause speakers to remain silent rather than communicate even arguably unlawful words, ideas, and images." *Reno v. Am. C.L. Union*, 521 U.S. 844, 872 (1997); *see also Sanders Cty. Republican Cent. Comm. v. Bullock*, 698 F.3d 741, 745 (9th Cir. 2012) ("The threat to infringement of such First Amendment rights is at its greatest when, as here, the state employs its criminalizing powers."). Under such circumstances, the "danger of [a] statute is, in large measure, one of self-censorship; a harm that can be realized even without an actual prosecution." *Am. Booksellers Ass'n, Inc.*, 484 U.S. at 393; *cf. Dombrowski v. Pfister*, 380 U.S. 479, 486–87 (1965) ("We have fashioned this exception to the usual rules governing standing. . . because of the 'danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application.'") (quoting *NAACP v. Button*, 371 U.S. 415, 433 (1963)). Thus, from the Supreme Court on down, federal courts have often observed that a threat of enforcement carries more credence when a challenged statute carries criminal penalties. *See, e.g., id.; Majors v. Abell*, 317 F.3d 719, 721 (7th Cir.) ("because most people are frightened of violating criminal statutes especially when the gains are slight, as they would be for

people seeking only to make a political point and not themselves political operatives, there is standing.").  As the Third Circuit explained recently:

> The attenuated risk of enforcement here matters less for Article III standing than in many pre-enforcement cases because the Law is exclusively civil. In *Driehaus* and every pre-enforcement case that it recounted, the statutes at issue included criminal penalties. 573 U.S. at 158–60, 166, 134 S.Ct. 2334. Indeed, as we noted at the start, much of the point of pre-enforcement challenges is to let people vindicate their constitutional rights without having to risk prosecution. *See id.* at 161, 134 S.Ct. 2334. But civil penalties lower the temperature.

*Nat'l Shooting Sports Found. v. Att'y Gen. of New Jersey*, 80 F.4th 215, 222–23 (3d Cir. 2023)

3. <u>Warnings</u>: Plaintiff Behn has been warned that her speech violates the Act's recruitment prohibition.  *See* Doc. 1 at ¶¶ 39–42.

4. <u>Private enforcement available</u>: The Act is privately enforceable.  *See* Doc. 1-1 at 1. Tennessee law also authorizes citizen-initiated indictments by citizen complainants, who both have the right to address Tennessee's citizen grand juries directly and are expressly encouraged to do so.  Tenn. R. Crim. P. 6 Advisory Commission Comment  on "T.C.A. §§ 40-12-104--40-12-107").

5. <u>The prosecuting entities refused to disavow enforcement</u>.  *See* Doc. 1 at ¶¶ 30–31.

**D.** **There is no sovereign immunity defect.**    There is "an important exception" to State sovereign immunity under *Ex Parte Young*: "a suit challenging the constitutionality of a state official's action is not one against the State."  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984).  The exception applies and allows the official-capacity claims against the Defendant District Attorneys here.  *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1034–36 (6th Cir. 2022) (official-capacity suit against District Attorneys permitted).

 **E.** **Scope of relief.**   The Plaintiffs do not oppose elision or dispute that a TRO should apply only to them.  If the Court agrees the Act is overbroad, though, "*all* enforcement" should be preliminarily enjoined.  *Virginia v. Hicks*, 539 U.S. 113, 119 (2003).

-5-

/s/ Daniel A. Horwitz_____
DANIEL A. HORWITZ, BPR #032176
MELISSA DIX, BPR #038535
SARAH L. MARTIN, BPR #037707
HORWITZ LAW, PLLC
4016 WESTLAWN DR.
NASHVILLE, TN 37209
daniel@horwitz.law
melissa@horwitz.law
sarahmartin1026@gmail.com
(615) 739-2888

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of June, 2024, a copy of the foregoing and all exhibits and attachments were sent via CM/ECF, USPS Mail, and/or via email, to:

Steven J. Griffin
Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, TN 37202
Tel: (615) 741-8726
Steven.Griffin@ag.tn.gov

*Counsel for Defendants*

/s/ Daniel A. Horwitz_____
Daniel A. Horwitz, BPR #032176