UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **RACHEL WELTY and AFTYN BEHN,** ) <br> ) <br> **Plaintiffs,** ) <br> ) <br> **v.** ) <br> ) <br> **BRYANT C. DUNAWAY** ) <br> ) <br> **Defendant.** ) <br> ) | Case No. 3:24-cv-00768 <br> Judge Aleta A. Trauger |

## **MEMORANDUM & ORDER**

Rachel Welty and Aftyn Behn have filed a Motion for Temporary Restraining Order ["TRO"] and Preliminary Injunction (Doc. No. 18), to which the defendants have filed a Response (Doc. No. 22), and the plaintiffs have filed a Reply (Doc. No. 23). The plaintiffs ask the court to "[i]ssue a temporary restraining order restraining the Defendants from enforcing Section 1 of Public Chapter No. 1032 ['Chapter 1032'] *against the Plaintiffs*"[1] and "[i]ssue a preliminary injunction preliminarily enjoining the Defendants from enforcing Section 1 of Public Chapter No. 1032." (Doc. No. 18 at 1 (emphasis added).) For the reasons set out herein, the court will deny the first request and set a hearing with regard to the second.

Section 1(a) of Chapter 1032 makes it unlawful for any adult to "intentionally recruit[], harbor[], or transport[] a pregnant unemancipated minor within this state" for one of the following purposes:

(1) Concealing an act that would constitute a criminal abortion under § 39-15-213 from the parents or legal guardian of the pregnant unemancipated minor;

---

[1] Although the plaintiffs ask the court to enjoin the enforcement of Chapter 1032 in its entirety, their substantive arguments are focused entirely on one aspect of the law, its "recruitment" provision, primarily in the context of the First Amendment.

(2) Procuring an act that would constitute a criminal abortion under § 39-15-213 for the pregnant unemancipated minor, regardless of where the abortion is to be procured; or

(3) Obtaining an abortion-inducing drug for the pregnant unemancipated minor for the purpose of an act that would constitute a criminal abortion under§ 39-15-213, regardless of where the abortion-inducing drug is obtained.

The statute cited by Chapter 1032, Tenn. Code Ann. § 39-15-213, makes it unlawful in Tennessee to "perform or attempt to perform" an "abortion," as defined by the statute, unless a detailed exception, involving risks to the life or "major bodily function[s]" of the pregnant woman, applies. Tenn. Code Ann. § 39-15-213(a), (b). By the plain language of the statute, Section 1032 § 1(a)(1) applies only to attempts to conceal abortions that actually violate Tennessee law, but Section 1032(a)(2) and (3) would reach a person's "harbor[ing], transport[ing], or recruit[ing]" a pregnant unemancipated minor in connection with an abortion or potential abortion that complies with the laws of the relevant jurisdiction, but which would be illegal in Tennessee.

Welty is an advocate who fears that Chapter 1032 may be used against her based on her activities assisting minors seeking abortions in jurisdictions where they are lawful. Behn is a legislator who fears that her vocal advocacy may lead to enforcement of Chapter 1032's "recruitment" provision against her. Chapter 1032 was passed by the General Assembly on April 24, 2024, and signed by the Governor on May 28th, 2024, with an effective date of July 1, 2024. Welty and Behn did not file suit until June 24, 2024 (Doc. No. 1), and they did not file the present motion until June 26, 2024 (Doc. No. 18), two business days before the effective date of the act. The defendants, who are district attorneys general of several Middle Tennessee judicial districts, argue that the plaintiffs' decision to wait until shortly before the law's effective date renders their requests inappropriate pursuant to the doctrine of laches. *See A.S. v. Lee*, No. 3:21-

CV-00600, 2021 WL 3421182, at *9 (M.D. Tenn. Aug. 5, 2021) (Richardson, J.) (applying laches based on a similar delay).

"A party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it." *United States v. City of Loveland, Ohio*, 621 F.3d 465, 473 (6th Cir. 2010) (quoting *Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*, 270 F.3d 298, 320 (6th Cir. 2001)). However, because laches is a doctrine rooted in equity, the existence of those elements does not require the court to apply the doctrine mechanically. Rather, "the existence of laches is a question primarily addressed to the discretion of the trial court." *Czaplicki v. The Hoegh Silvercloud*, 351 U.S. 525, 534 (1956) (citing *Gardner v. Panama R. Co.*, 342 U.S. 29, 30 (1951)).

The court finds that the elements necessary to bring the doctrine of laches into play are present here. The plaintiffs' decision to wait until so close to the effective date of the statute is strongly suggestive of a lack of diligence, if not a litigation tactic. The primary justification for that delay appears to be that Welty asked the defendants for assurances that they would not enforce the law against her, and she was waiting for any responses. (Doc. No. 1 ¶¶ 30–31; Doc. No. 23 at 1.) However, a refusal to specifically assure a plaintiff that he or she will not be subject to an enforcement action is simply one factor that is relevant to standing—not a precondition to filing. *See Online Merchants Guild v. Cameron*, 995 F.3d 540, 550 (6th Cir. 2021) The plaintiffs, moreover, could have requested the assurances, filed shortly thereafter, and simply dropped their claims against any defendant who offered the requested assurance after filing. The court, accordingly, finds a lack of diligence.

The court also finds prejudice. The defendants have had to respond to this motion exceedingly quickly—a difficult task for even a single party, to say nothing of a large group of

3

different public servants across multiple local jurisdictions. The issues raised by this case, moreover, are novel and complex. The power of a state to skirt the limitations of its territoriality is among the most delicate questions in our constitutional system. The constitutionality of the recruitment provision, moreover, appears to hinge, in significant part, on the question of whether it regulates so-called "pure speech." "Pure speech," however, is an abstract and challenging concept, especially when one is dealing with speech that takes place against a legal and cultural background as complex and shifting as the one that now surrounds the issue of abortion. The defendants (and the court) have been forced to grapple with these issues within a strikingly short timeframe. It is, therefore, within the court's discretion to invoke the doctrine of laches, as the defendants request.

The court will do so with regard to the TRO request, but not the request for a preliminary injunction. Neither the parties nor the public would benefit from the court's barreling into these difficult issues in a rushed manner, and, while the plaintiffs may well have demonstrated enough of a likelihood of enforcement to support standing, they have not shown that they are in dire need of an immediate TRO to protect them individually. That is particularly true, given several assurances that the defendants have explicitly made in their documents filed with the court in this case:

- "Merely providing information about out-of-state abortion services or abortion drugs is insufficient [to violate Chapter 1032]." (Doc. No. 22 at 3.)
- "[T]he law's reference to 'recruit[ment]' is properly read to prohibit affirmative conduct—i.e., reaching out to and convincing a minor to [allow another to] 'transport' or 'harbor' them for the purpose of helping them obtain an abortion Tennessee law

4

prohibits—not simply speaking about abortion and mentioning that other states permit the procedure." (*Id.* at 15.)

- "[T]he law's text—properly interpreted—does not penalize pure speech at all; it prohibits affirmative conduct like reaching out to and convincing a minor to be 'transport[ed]' or 'harbor[ed]' without their parents' consent for the purpose of helping them obtain an abortion Tennessee law prohibits." (*Id.* at 17.)

The court notes that these statements are not simply legal rhetoric or the positions of mere supporters of the law. They are express, affirmative statements of the positions of the elected district attorneys general of the relevant judicial districts, all named defendants in this case, made through their counsel in this case, the State's Attorney General. to a federal court. The court is aware of no reason why individuals should not be permitted to reasonably rely on those assurances, and, if future events show that any defendant was misrepresenting his or her position, sanctions may be warranted.

The plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction is, therefore, **DENIED** with regard to the request for a TRO. A hearing is **SET** for August 21, 2024 at 1:00 p.m. in connection with the request for a preliminary injunction. (Doc. No. 18) The plaintiffs are hereby **ORDERED** to file a further Reply by August 1, 2024, in which they should address, among other things, why they believe themselves to be entitled to a preliminary injunction granting protection to nonparties. In so doing, the plaintiffs should account for the fact that, as the defendants have correctly pointed out, the fact that a lawsuit raises a supposed "facial" challenge to a law does not necessarily entitle the plaintiffs to seek relief beyond that required to address their own injuries. *See L. W. ex rel. Williams v. Skrmetti*, 83 F.4th 460, 490 (6th Cir. 2023); *Does #1-9 v. Lee*, 659 F. Supp. 3d 865, 893 (M.D. Tenn. 2023) (Trauger, J.). The

plaintiffs should also address the question of whether and why the court can enjoin the law, in full, given the fact that the plaintiffs' substantive arguments are narrowly focused on the recruitment provision.

    It is so **ORDERED**.

                                            ALETA A. TRAUGER
                                            United States District Judge