UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| RACHEL WELTY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:24-cv-00768 |
| | ) | District Judge Aleta A. Trauger |
| BRYANT C. DUNAWAY, et al., | ) | Magistrate Judge Jeffrey S. Frensley |
| | ) | |
| Defendants. | ) | |

**REPLY IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

Plaintiffs' response misses the mark. They skate over the focus of the Act: preventing adults from facilitating out-of-state abortions for other peoples' children without their knowledge or consent. Plaintiffs also downplay their burden at every turn. They trade the governing motion-to-dismiss standard for an obsolete, notice-focused version of that standard. They misunderstand Defendants' threshold jurisdictional arguments. And they misconstrue governing precedent on the merits.

I. **Plaintiffs cannot overcome threshold jurisdictional hurdles.**

***Plaintiffs lack standing.*** Plaintiffs' Complaint shows neither (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest[] but proscribed by" the Act nor (2) "a certain threat of prosecution." *Crawford v. Dep't of Treasury*, 868 F.3d 438, 454-55 (6th Cir. 2017). Plaintiffs' response barely addresses the first requirement, which warrants dismissal on its own. They instead train their sights on the second requirement, insisting (at 20-24) that they have shown a credible threat of enforcement. Plaintiffs walk through various factors that courts consider in assessing pre-enforcement standing. But those factors are of little help to them.

*First*, the recency of the enactment does not show that these plaintiffs are likely to be prosecuted. Plaintiffs' position is extreme: "the recency of the Act's enactment alone," they say, "makes the threat credible." Resp. at 21. But as the Sixth Circuit has made clear, "the mere existence of a statute . . . is not sufficient" to establish standing. *NRA v. Magaw*, 132 F.3d 272, 293 (6th Cir. 1997). And it's not hard to see why. If the mere fact of enactment were enough, Plaintiffs' burden of showing standing would amount to nothing, and every newly enacted law could be challenged immediately.[1]

*Second*, while the presence of criminal penalties can be relevant in the pre-enforcement-standing context, it does not make enforcement more likely. *Contra* Resp. at 21-22. Indeed, the Third Circuit

---

[1] *Universal Life Church Monastery Storehouse v. Nabors* does not say otherwise; the court there was discussing *two* contemporaneous enactments—one that arguably authorized prosecution and another that raised the possible penalties—and concluded that "the contemporaneity of those enactments" added legitimacy to the plaintiffs' fears of prosecution. 35 F.4th 1021, 1035 (6th Cir. 2022).

1

decision Plaintiffs cite makes clear only that an "attenuated risk of enforcement . . . matters *less*" when criminal penalties are at stake. *Nat'l Shooting Sports Found. v. Att'y Gen. of N.J.*, 80 F.4th 215, 222 (3d Cir. 2023) (emphasis added). It still stresses that a plaintiffs' failure to "show[] a substantial likelihood" of enforcement "suffices to defeat standing." *Id.*

*Third*, warnings of possible enforcement from people without enforcement authority are irrelevant. Yes, one legislator made comments that Plaintiffs view as threatening. But the question here is whether there is a risk of enforcement—a risk that cannot possibly be shown by a statement from someone with no power to enforce the law. *Cf. Universal Life Church*, 35 F.4th at 1032 ("What plaintiffs must show to have standing to seek an anti-enforcement injunction . . . is that [the defendant] can and may take some enforcement action against them.").

*Fourth*, nothing about the Act makes it uniquely easy to enforce. The Act's enforcement mechanism is the norm among Tennessee's criminal laws. That Tennessee law generally permits citizen arrests and citizen-initiated indictments, *see* Resp. at 23, changes nothing. Even in those situations, district attorneys retain "the sole duty, authority, and discretion to prosecute criminal matters," *State v. Spraldin*, 12 S.W.3d 432, 436 (Tenn. 2000), and have "virtually unbridled discretion" to dismiss a case, *Dearborne v. State*, 575 S.W.3d 259, 262 (Tenn. 1978).

*Finally*, for a refusal to disavow enforcement to matter, it must be about "a particular plaintiff," *Online Merchs. Guild v. Cameron*, 995 F.3d 540, 550 (6th Cir. 2021), and about that plaintiff's "specific speech," *Davis v. Colerain Twp.*, 51 F.4th 164, 174 (6th Cir. 2022). Defendants' general law-enforcement duty and their in-the-abstract statutory-interpretation arguments about the Act's scope do not "suggest that [they will] enforce the [Act] against anything like [Plaintiffs'] *specific* speech" or conduct. *Id.*

**Defendants are entitled to sovereign immunity.** As Defendants have explained (at 16-17), they are entitled to sovereign immunity, and the *Ex parte Young* exception does not apply. Plaintiffs' only response (at 24) is to mischaracterize Defendants' position. Defendants, they say, have argued

2

that *Young* "requires more than the credible threat of enforcement necessary to establish an Article III injury." But Defendants have argued nothing of the sort. They instead have pointed to well-established Sixth Circuit precedent holding that to invoke *Ex parte Young*, Plaintiffs must show that *these Defendants* have "enforced []or threatened to enforce" the Act against them. *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015); *see also Doe v. DeWine*, 910 F.3d 842, 848 (6th Cir. 2018) (requiring that enforcement be "likely"). That's not "more than the credible threat required" by Article III. Resp. at 24. And it's certainly not a "'perverse reading' of controlling precedent," *id.* (quoting *Russell*, 784 F.3d at 1047); it's what *Russell* itself (and countless other decisions) have held. The upshot: With no allegations that Defendants have threatened to enforce the Act against anyone—let alone these Plaintiffs—*Ex parte Young* does not apply, and Plaintiffs' claims should be dismissed.

## II. Plaintiffs' claims fail on the merits.

**Unconstitutional vagueness and free speech.** Using traditional tools of statutory construction, Defendants have explained (at 4-12) why the Act is not unconstitutionally vague and does not unconstitutionally burden speech. In response, Plaintiffs (at 7-8) take issue with the very endeavor of statutory construction. They argue, in essence, that because Defendants have resorted to dictionaries and canons of construction, the Act is *per se* vague. That's obviously wrong. *See Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 500–03 (1982) (consulting dictionaries and employing usual methods of statutory interpretation to conclude that a statute was not vague). Plaintiffs also fundamentally misunderstand the function of the associated-words canon. They rightly note (at 12) that for the canon to apply, the words at issue must "have some quality in common." But they go on to demand a degree of commonality that would render the canon pointless. The canon exists precisely because statutory lists can contain terms that seem like outliers; it helps courts and parties fit those outliers with the rest of the list in which they are found. *See United States v. Hill*, 963 F.3d 528, 534 (6th Cir. 2020) (explaining the canon helps avoid giving statutory language "unintended breath"). Plaintiffs

3

similarly miss the point of the various "recruiting" definitions Defendants offered (at 5-6). True, the Act is not concerned with "membership-based organization[s]." Resp. at 14. But much like recruiting in that context means to "fill up" with new members, and in others to "secure" someone's services or to "enlist" or "enroll," MTD Mem. at 8, recruiting here contemplates intentional activity designed to bring about a specific outcome—a minor leaving the state to obtain an elective abortion without parental consent. The word does not apply to abstract advocacy about the value of joining an organization or the availability of abortion; it applies to targeted and successful recruitment efforts.

Trying another tack, Plaintiffs (at 9) assert that "speakers," like them, are "in a quandary." "To understand the meaning of 'recruits,'" they say, "speakers cannot just consult the statute itself, which does not define the term." Nor, they continue, can they look to the Act's legislative history for "guidance" or "rely on the Defendants to clarify" the Act's scope. But as Defendants have explained (at 4), none of this can render a statute *unconstitutionally* vague. Undefined terms are commonplace in statutes; legislative history is not a controlling source of a statute's meaning; and government officials have no duty to offer their interpretations of laws on demand.

Plaintiffs further argue (at 12-13) that the Act differs from other anti-trafficking statutes that prohibit "recruiting" because any speech targeted by those statutes is designed to bring about conduct that "is not constitutionally protected." But that makes little sense. There is no constitutional right to obtain an abortion—much less to entice someone else's child to leave the state for an elective abortion without parental consent. Plaintiffs also ignore that Tennessee's sex-trafficking statute prohibits the in-state "recruit[ing]" of "another person for the purpose of providing a commercial sex act," without regard to whether that ultimate act might be legal where it happens (e.g., Nevada).

Finally, Plaintiffs insist (at 18-19) that the Supreme Court's decision in *Bigelow v. Virginia*, 421 U.S. 809 (1975), "controls the matter." Plaintiffs, though, read too much into this decision. The law at issue there outlawed in-state advertising about legal out-of-state abortions. *Id.* at 812-13. But the

4

Case 3:24-cv-00768    Document 33    Filed 08/01/24    Page 5 of 8 PageID #: 346

Act, as Defendants have explained (at 6-7), does *not* bar statements about the availability of legal abortions in other states. Nor does the Act regulate any out-of-state activity or prohibit anyone from leaving the State. Rather, it targets the recruiting, transporting, and harboring of minors *within Tennessee* for the purpose of facilitating out-of-state abortions without their parents' consent.

**Overbreadth.** Plaintiffs' overbreadth response also falls flat. Plaintiffs say (at 19) that they need not address "how the Act works in all of its applications" because the function of a complaint is not to "'analyze' claims, but to provide 'fair notice' of them." That standard has been rejected, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and "district courts may not rely on contrary language" in earlier cases "which is inconsistent with the Supreme Court's more recent . . . decisions in *Twombly* and *Iqbal*," *Bailey v. City of Ann Arbor*, 860 F.3d 382, 389 (6th Cir. 2017). But even if analysis "does not belong in a complaint," Resp. at 19, it is surely needed to determine whether that complaint states a claim. And without specific allegations about how the Act would work in "all of its applications," it's hard to see how that analysis is possible. *Cf. Moody v. NetChoice*, 144 S. Ct. 2383, at 2397-98 (faulting the parties and courts below for "not address[ing] the full range of activities the laws cover, and measur[ing] the constitutional against the unconstitutional applications").

### III.  Abstention is warranted.

Plaintiffs argue (at 25) that this Court "need not address the merits of abstention" because "[a]bstention is a request for relief that must be made by motion." This argument makes little sense. For one thing, "[f]ederal courts may raise abstention *sua sponte*." *Sims v. McCarter*, No. 3:18-CV-0072, 2018 WL 1138537, at *2 (M.D. Tenn. Mar. 2, 2018) (citing *Hill v. Snyder*, 878 F.3d 193, 206 n.3 (6th Cir. 2017)); *see also, e.g.*, *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 802 (9th Cir. 2001) ("[W]e may sua sponte consider *Pullman* abstention at any time"). And for another, Defendants *did* request abstention in a motion—the very motion to dismiss that Plaintiffs raised this argument in response to.

Respectfully submitted,

JONATHAN SKRMETTI
Attorney General and Reporter

/s/ *Steven J. Griffin*
STEVEN J. GRIFFIN (BPR# 040708)
Senior Counsel for Strategic Litigation

MATTHEW D. CLOUTIER (BPR# 036710)
Assistant Solicitor General

DONNA L. GREEN (BPR# 019513)
Managing Attorney and Senior Assistant Attorney General

Office of Tennessee Attorney General
P.O. Box 20207
Nashville, TN 37202
(615) 741-9598
Steven.Griffin@ag.tn.gov
Matt.Cloutier@ag.tn.gov
donna.green@ag.tn.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 1, 2024, a copy of the foregoing document was filed using the Court's electronic court-filing system, which sent notice to the following counsel:

Daniel A. Horwitz
Melissa Dix
Sarah L. Martin
Horwitz Law, PLLC
4016 Westlawn Dr.
Nashville, TN 37209
daniel@horwitz.law
melissa@horwitz.law
sarahmartin1026@gmail.com
(615) 739-2888

*Counsel for Plaintiffs*

                                                /s/ *Steven J. Griffin*
                                                STEVEN J. GRIFFIN