UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RACHEL WELTY, et al., | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 3:24-cv-00768 |
| BRYANT C. DUNAWAY, et al., | ) District Judge Aleta A. Trauger |
| Defendants. | ) Magistrate Judge Jeffrey S. Frensley |

**DEFENDANTS' SUPPLEMENTAL RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs' testimony at the preliminary injunction hearing on August 30, 2024, further confirms that they each lack standing to bring this pre-enforcement challenge to the Underage Abortion Trafficking Act (codified at Tenn. Code Ann. § 39-15-220) and cannot overcome Defendants' entitlement to sovereign immunity. These jurisdictional bars doom their ability to demonstrate a likelihood of success on the merits and are fatal to their request for the "extraordinary and drastic remedy" of preliminary injunctive relief. *Munaf v. Geren*, 553 U.S. 674, 689 (2008).

**I.      Plaintiffs' testimony confirms they lack standing**

Neither Plaintiff testified that she intends "to engage in a course of conduct arguably affected with a constitutional interest[] but proscribed by" the Act's "recruiting" provision, as that provision is properly construed. *Crawford v. U.S. Dep't of Treasury*, 868 F.3d 438, 454 (6th Cir. 2017) (quotations omitted). Nor did Plaintiffs present evidence of "a certain threat of prosecution" by any of these Defendants. *Id.* at 455. Unable to satisfy either of these evidentiary requirements, Plaintiffs lack standing.

### A. No intent to engage in conduct proscribed by the Act's recruiting provision

Plaintiff Welty, a local attorney, testified that she has engaged in the following activities in the past, and presumably desires to continuing engaging in those activities in the future:

- Providing minor clients who reach out to her with "information about ways they can legally obtain an abortion." Ex. A at 7:19-22; *see also id.* at 33:15-34:19, 36:8-13 (confirming she does not reach out to or target any particular minor for that purpose).

- Volunteering with an "abortion fund that raises money and gives block grants to abortion clinic[s] outside of the State of Tennessee" and publishes a "website with lots of information on it." *Id.* at 13:21-14:5, 14:9-10, 16:6-7.

- Distributing "handouts about abortion care [and] abortion pills" at "different places," including at "fundraisers," the state legislature, retail stores, and festivals where "anyone could pick up the handout." *Id.* at 14:10-12, 16:4-17:4, 18:5-7 (citing Doc. 1-2). However, Welty does not know whether unemancipated minors are among those who pick up handouts at these events. *Id.* at 18:2-8 ("I don't know that specifically.").

- "Get[ting] interviewed" and talking to "reporters" about abortion access. *Id.* at 15:6-7, 19:2-3.

- Giving "speeches" and participating in other "speaking engagements," including "talks" about abortion drugs. *Id.* at 15:7, 16:3-4, 18:23-19:2.

- Leaving "little cards" with a list of web sites about abortion options in "different places," like the "bathrooms of bars." *Id.* at 17:5-9, (citing Doc. 1-2, at PageID# 21).

- Participating in "marches." *Id.* at 19:1.

- Posting on social media "[t]o provide information to Tennesseans about abortion care" and where abortion pills are available. *Id.* at 19:8-18.

Plaintiff Behn, a social worker who also serves as a state representative and community organizer, testified that she has engaged in the following activities that she hopes to continue doing:

- Providing her political constituents and social-work clients information about available abortion services "so that they can make an informed decision." Ex. A, at 39:17-40:5, 44:18-19.

- Participating in "Days on the Hill" at the state legislature, though she has no interaction with "young people" at those events "on an individual basis." *Id.* at 40:13-19.

- Posting on social media, including the use of infographics, "to demystify legislation and provide information . . . especially this bill that was passed this session." *Id.* at 41:4-9, 47:3-

49:7 (citing Doc. 1-5).

- Making literature available in her office "about our abortion fund, the services that they provide, and information as to how to contact the nearest abortion provider outside the State of Tennessee." *Id.* at 41:10-19 (citing Doc. 1-2)

- Leaving "stickers in places where there are minors" who might see them. *Id.* at 54:4-12.

None of these activities described by Plaintiffs are proscribed by the Act's "recruiting" provision, which—properly construed using familiar principles of statutory construction—prohibits targeted conduct intended to convince or induce a minor within this State to obtain an abortion considered illegal in Tennessee without the consent of the minor's parent or legal guardian. PI Opp'n, Doc. 22, at PageID # 217-220; MTD Mem., Doc. 26, at PageID# 257-262.

The Act's scienter requirement, which requires that a person act "intentionally" and "for the purpose of" facilitating a minor's abortion, removes any doubt. Tenn. Code Ann. § 39-15-220(a). Both Plaintiffs confirmed that when they speak with others about abortion or engage in any of the other activities described at the hearing, they do so only to provide information about available options so that those persons can make informed decisions—not to try to convince anyone to do anything. Welty testified: "My goal as an advocate is *never to persuade someone.* It is to give them options and then let them make their own decision." Ex. A, at 24:16-18. Behn confirmed the same with respect to her own abortion-related speech and conduct. *Id.* at 56:1-5. Without any intent to persuade, Plaintiffs necessarily cannot demonstrate their "intention to engage in a course of conduct . . . proscribed by" the Act's "recruiting" provision. *Crawford*, 868 F.3d at 454. And the fact that a minor may ultimately choose to obtain an abortion after receiving information from either Plaintiff about her "legal options," Ex. A at 9:3-7, does not by itself demonstrate the necessary intent required for culpability.

To the extent Plaintiffs may desire to help some currently unknown minor follow through on obtaining an abortion *after* the minor has already chosen to pursue that option, *e.g., id.* at 24:19-25:2, that would not constitute "recruiting"—the only provision of Act that Plaintiffs challenge here.

### B. Plaintiffs fail to demonstrate a certain threat of prosecution

Plaintiffs' failure to demonstrate an intention to engage in conduct prohibited by the Act's "recruiting" provision necessarily means they cannot show a "certain threat of prosecution." *Crawford*, 868 F.3d at 454. And their hearing testimony bears that out. Plaintiffs failed to present any evidence demonstrating a "certainly impending" threat of prosecution against them, as judged by the four main "*McKay* factors." *Friends of George's, Inc. v. Mulroy*, 108 F.4th 431, 439 (6th Cir. 2024) (citing *McKay v. Federspiel*, 823 F.3d 862, 868-69)); *see also* PI Opp'n at PageID# 226-227.

*History of past enforcement.* Plaintiffs—testifying two months after the Act had been in effect—confirmed they have no knowledge of any past enforcement of the Act's "recruiting" prohibition, either against them or anyone else. Ex. A at 25:5-16, 56:22-25.

*Receipt of enforcement letters.* Plaintiffs likewise confirmed they had not received any "warning letters" regarding potential enforcement of the Act against them. *Id.* at 25:18-22, 56:22-57:23.

*Ease of enforcement.* Neither Plaintiff offered any testimony showing that the Act makes enforcement easier or more likely compared to other criminal statutes. *See id.* at 58:9-13.

*Refusal to disavow enforcement.* Plaintiffs also failed to demonstrate that any of these Defendants has refused to disavow enforcement of the Act's "recruiting" prohibition with respect to their intended speech or conduct. The only evidence Plaintiffs presented on this factor was a letter that counsel had sent to these Defendants on Welty's behalf, to which Welty received no response. Ex. A at 21:24-22:14 (citing Doc. 1-4). But that letter asked Defendants to "disavow *all* enforcement of [the Act's] 'recruitment' prohibition against Ms. Welty." Doc. 1-4 (emphasis added). It did *not* ask Defendants to disavow enforcement of Welty's "*specific* speech"—the focus here. *Friends of George's*, 108 F.4th at 440 (citing *Davis v. Colerain Twp.*, 51 F.4th 164, 171 (6th Cir. 2022)). Behn made no such request, either. Ex. A, at 57:20-23. That evidentiary gap further cuts against Plaintiffs on the question of whether they face a "certainly impending threat of prosecution." *Friends of George's*, 108 F.4th at 440.

Regardless, as discussed above, everything that could be disavowed under the Act's "recruiting" provision with respect to Plaintiffs' *specific* speech and conduct has been. *Supra*, at 2-3. And the doctrine of judicial estoppel belies Plaintiffs' new argument at the preliminary injunction hearing that any such disavowal must be made by way of live testimony or affidavit.

Judicial estoppel prevents Defendants from "asserting one position in [this] case and the opposite position in a later case" with respect to these Plaintiffs. *Chaney-Snell v. Young*, 98 F.4th 699, 711 (6th Cir. 2024) (citing *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)); *see Mirando v. U.S. Dep't of Treasury*, 766 F.3d 540, 545 (6th Cir. 2014) (estoppel precludes a party from "achieving success on one position, then arguing the opposite to suit an exigency of the moment"). And the Sixth Circuit has clarified that a party's statement in earlier litigation need not be made under oath for estoppel to apply; the doctrine still applies when a party "asserted an inconsistent position in a written filing and argued the motion on the merits before the court"—as Defendants have done here. *Shufeldt v. Baker, Donelson, Bearman, Caldwell & Berkowitz, PC*, 855 F. App'x 239, 245 (6th Cir. 2021) (rejecting argument that party's statement in prior case must have been made through sworn testimony for judicial estoppel to apply). The cases cited by Plaintiffs at oral argument are not to the contrary.[1]

---

[1] In *Vittitow v. City of Upper Arlington*, the court noted that it was not "*required*" to "accept representations from the City's counsel" as to how a statute would be enforced where it was "not at all clear what representations" had been made, it was "not clear" that city's counsel could "bind" the city's legislative body or police department, and the city's idea of what constituted a constitutional enforcement procedure conflicted with on-point Supreme Court precedent. 43 F.3d 1100, 1106 (6th Cir. 1995) (emphasis added). In *Planned Parenthood Association of Cincinnati v. City of Cincinnati*, the court rejected the defendant's reliance on limiting language contained in a permit-application form in arguing that the plaintiff faced no credible threat of prosecution under the challenged ordinance because "there [was] no requirement under the Ordinance that the City retain the current version of the permit application form." 822 F.2d 1390, 1395 (6th Cir. 1987). And in *Kucharek v. Hanaway*, the Seventh Circuit in dicta noted that the Wisconsin attorney general's concession regarding the scope of a new obscenity statute was "so implausible" that it "hesitate[d] to rely on it," particularly given the lack of any representation by him that his interpretation would be binding; it further observed that a "statute containing one or several ambiguities that can be dispelled at a stroke by interpretation is not open to that objection and therefore is not vague in the constitutional sense" and ultimately left it to the state courts to resolve any ambiguity as to whether the statute covered simulations. 902 F.2d 513, 518-19 (7th Cir. 1990).

Even setting all that aside, refusal to disavow enforcement "is just one data point among many on the question whether a credible threat of enforcement exists." *Davis*, 51 F.4th at 174. And any refusal to disavow would do "nothing to show that [Plaintiffs] plan to engage in speech that might arguably fall within" the Act's recruiting prohibition—which they have not done. *Id.*

For all these reasons, too, Plaintiffs lack standing and cannot demonstrate a likelihood of success on the merits.

## II. Plaintiffs' testimony confirms they cannot overcome sovereign immunity

Because Plaintiffs cannot demonstrate that any of these Defendants has "enforced []or threatened to enforce" the Act against them or their intended speech or conduct, the *Ex parte Young* exception to sovereign immunity does not apply. *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015); *see also Doe v. DeWine*, 910 F.3d 842, 848 (6th Cir. 2018) (making clear that "it must be likely that the official will enforce the law against the plaintiff"). For this additional reason, Plaintiffs are unlikely to succeed on the merits.

## CONCLUSION

Plaintiffs' motion for preliminary injunction should be denied.

Dated: September 20, 2024.                    Respectfully submitted,

JONATHAN SKRMETTI
Attorney General and Reporter

/s/ *Steven J. Griffin*
STEVEN J. GRIFFIN (BPR# 040708)
Senior Counsel for Strategic Litigation

MATTHEW D. CLOUTIER (BPR# 036710)
Assistant Solicitor General

DONNA L. GREEN (BPR# 019513)
Managing Attorney and Senior Assistant Attorney
General

OFFICE OF TENNESSEE ATTORNEY GENERAL
P.O. Box 20207
Nashville, TN 37202
(615) 741-9598
Steven.Griffin@ag.tn.gov
Matt.Cloutier@ag.tn.gov
donna.green@ag.tn.gov

**CERTIFICATE OF SERVICE**

  I hereby certify that on September 20, 2024, a copy of the foregoing document was filed using the Court's electronic court-filing system, which sent notice to the following counsel:

Daniel A. Horwitz
Melissa Dix
Sarah L. Martin
HORWITZ LAW, PLLC
4016 Westlawn Dr.
Nashville, TN 37209
(615) 739-2888
daniel@horwitz.law
melissa@horwitz.law
sarah@horwitz.com

*Counsel for Plaintiffs*

                /s/ *Steven J. Griffin*
                STEVEN J. GRIFFIN

8
Case 3:24-cv-00768   Document 39   Filed 09/20/24   Page 8 of 8 PageID #: 519