# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **RACHEL WELTY, et al.,** | ) |
| | ) |
|     **Plaintiffs,** | ) |
| | )    **Case No. 3:24-cv-00768** |
| **v.** | ) |
| | ) |
| **BRYANT C. DUNAWAY, et al.,** | ) |
| | ) |
|     **Defendants.** | ) |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR
## MOTION FOR SUMMARY JUDGMENT

The Act's "recruiting" provision is narrow. It prohibits targeted efforts to induce or enlist a Tennessee minor to obtain an abortion considered illegal in Tennessee without parental consent. Plaintiffs' intended speech, as their own testimony reveals and as Defendants have consistently maintained, is *not* prohibited recruiting. Rather than take that "real-world win," *Christian Healthcare Centers, Inc. v. Nessel*, 117 F.4th 826, 860 (6th Cir. 2024) (Murphy, J., concurring), Plaintiffs try to conjure a controversy by stretching the Act to cover their abortion-related advocacy. They urge the Court to skip over determining what the Act actually prohibits and claim to fear enforcement based on Defendants' general law-enforcement authority—flouting *Friends of George's, Inc. v. Mulroy*, a decision that binds this Court. *See Horwitz v. U.S. Dist. Ct. for the Middle Dist. of Tenn.*, No. 3:24-CV-1180, 2025 WL 90108, at *4 (M.D. Tenn. Jan. 14, 2025). But as Defendants have stressed, the Act *does not apply* to their intended speech, so they face no certain threat of enforcement and cannot overcome sovereign immunity. That inapplicability necessarily dooms Plaintiffs' as-applied challenge. Plaintiffs' facial challenge fails too. They cannot dismiss the Act's many constitutional applications, nor show that those applications are substantially outweighed by unconstitutional ones. This Court should enter summary judgment for Defendants.

## I. Plaintiffs Lack Standing.

To establish pre-enforcement standing, Plaintiffs had to show both an intention to violate the Act and a certain threat of prosecution if they do so. Plaintiffs have shown neither.

***Intention to violate the Act.*** The recruiting provision prohibits conduct intended to induce a minor within this State to obtain an abortion considered illegal in Tennessee without parental consent. Plaintiffs testified that they do not engage in this behavior. Their testimony should end this case. To avoid that result, Plaintiffs (at 890) ask the Court to reject the State's narrow reading in favor of a broad one that *would* cover their behavior.

None of the sources Plaintiffs cite (at 890-91) in support of their broad reading of the Act are persuasive.[1] Plaintiffs point to a 2007 Attorney General opinion interpreting the word "recruit" in the abstract, as well as out-of-circuit cases interpreting "recruiting" in other scenarios. But Tennessee statutory-construction precedent requires that statutory text be read and interpreted in context. *State v. Deberry*, 651 S.W.3d 918, 925 (Tenn. 2022). That requirement renders Plaintiffs' general definitions irrelevant. Tennessee law also prohibits consideration of legislative history until all other methods of statutory interpretation have been exhausted. *Id.* at 930. So isolated legislative statements, including cherry-picked comments from a bill sponsor, don't help Plaintiffs either. The same goes for Plaintiffs' cited judicial opinions interpreting "the same provision" in the abortion-trafficking context. The first, from an earlier stage of this case, is on appeal and cannot dictate the outcome here. *See* MSJ Mem., D.E.69, 824 (explaining the inapplicability of law-of-the-case doctrine). And the others—all from the same out-of-circuit litigation—shed no light on how the Act should be interpreted under Tennessee's rules of statutory construction. Finally, out-of-context excerpts from Defendants' filings cannot defeat Defendants' consistent position that "Plaintiffs' intended conduct falls outside the 'recruiting' provision." *Id.* at 831; *see also* PI Resp., D.E.22, 224-29; MTD Mem., D.E.26, 265-69; Supp. PI Resp., D.E.39, 512-17.

***Certain threat of prosecution.*** At the outset, it must be repeated that "mere allegations of a subjective chill" are never enough for pre-enforcement standing. *McKay v. Federspiel*, 823 F.3d 862, 868-69 (6th Cir. 2016) (cleaned up). Indeed, the *McKay* factors exist precisely so that plaintiffs can point to "other indication[s] of imminent enforcement" demonstrating that the chill

---

[1] Nor can Plaintiffs escape the Act's "intent" requirement by noting (at 891) that such requirements can sometimes apply to conduct alone, not necessarily the *results* of conduct. The Act prohibits "intentionally ... recruit[ing] ... a pregnant unemancipated minor ... for the purpose of ... concealing an act that would constitute a criminal abortion ... from [her] parents or legal guardian." Tenn. Code Ann. § 39-15-201(a). Plaintiffs' testimony confirms that they lack this specific intent.

2

Case 3:24-cv-00768    Document 75    Filed 02/13/25    Page 3 of 7 PageID #: 934

they feel is actually objective. *Id.* at 868 (quotation omitted). To that end, the *McKay* factors focus on the likelihood of enforcement against *the plaintiffs*, not theoretical enforcement against someone somewhere. *See id.* at 869. Plaintiffs' *McKay* arguments thus miss the mark. They point to facts that—at most—suggest that enforcement of the Act in the abstract is possible. Defendants, they say, have argued that the Act could be enforced against other hypothetical speakers and that district attorneys have the authority to prosecute violations of the State's criminal laws. But none of these facts in any way suggests that *this Act* is likely to be enforced against *these Plaintiffs* by *these Defendants*.[2] And that is what matters. *See NRA v. Magaw*, 132 F.3d 272, 293 (6th Cir. 1997).

## II. Defendants are Immune.

Plaintiffs (at 908-09) continue to conflate the standing and sovereign-immunity inquiries. Plaintiffs are right that a showing of pre-enforcement standing will generally support application of *Ex parte Young*. Defendants have never argued otherwise. Instead, Defendants have argued since the start of this case that *for the same reasons* Plaintiffs lack standing—i.e., their inability to show a certain threat of enforcement by any of *these Defendants* against *them*—sovereign immunity bars their claims. *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046-47 (6th Cir. 2015). Sovereign immunity, then, is just another way to conclude that this Court lacks jurisdiction. There is nothing "perverse" about that. *Contra* Pls.' MSJ Resp., D.E.71, 909.

## III. Plaintiffs' Claims Fail on the Merits.

As Defendants have explained, Plaintiffs' claims—both First and Fourteenth Amendment, both facial and as-applied—fail on the merits. Plaintiffs disagree, but their arguments fall flat.

---

[2] Possible private enforcement changes nothing. Any injury stemming from private enforcement is not traceable to Defendants (who have only criminal enforcement authority) and is not redressable by an injunction against them. *See Whole Woman's Health v. Jackson*, 595 U.S. 30, 44 (2021). Indeed, the injunction already entered in this case does *nothing* to limit private enforcement of the Act. *See* Prelim. Inj. Order, D.E.41, 587-88.

3

Plaintiffs claim (at 909) that Defendants have "failed to address" their as-applied challenge and content- and viewpoint-discrimination arguments. That's wrong. From day one, Defendants have said that the Act *does not apply* to Plaintiffs' intended conduct. And if that's true, there is necessarily no as-applied challenge to address. Nor have Defendants "failed to address" Plaintiffs' content- and viewpoint-discrimination arguments. True, content- and viewpoint-based speech restrictions are ordinarily subject to strict scrutiny. But Plaintiffs skip a threshold question: whether the restricted speech even warrants First Amendment protection. And here, as Defendants have pointed out, the Act prohibits speech incident to criminal conduct, which is "categorically excluded from First Amendment protection." *United States v. Williams*, 553 U.S. 285, 297-98 (2008); *United States v. Stevens*, 559 U.S. 460, 468-69 (2010). A ban on "encourag[ing] or induc[ing] illegal immigration," for example, obviously targets speech for its content and viewpoint. *United States v. Hansen*, 599 U.S. 762, 766 (2023) (citation omitted). But because that speech facilitates crime, the First Amendment never comes into play. *See id.* at 783; *cf. K.C. v. Individual Members of Med. Licensing Bd. of Ind.*, 121 F.4th 604, 628-32 (7th Cir. 2024). So too here.

The Act's focus on speech incident to crime is a problem for Plaintiffs' facial challenge, which requires that the "unconstitutional applications substantially outweigh [the] constitutional ones." *Moody v. NetChoice, LLC*, 603 U.S. 707, 724 (2024). On one side of the scales, Defendants have identified a host of constitutional applications. Plaintiffs don't dispute the existence of these applications. Instead, they argue (at 910-12) that other laws criminalize the same behavior. This argument fails twice over. First, overlapping criminalization is irrelevant to the facial-challenge inquiry. The question is whether the Act's constitutional applications are substantially outweighed, not whether they might be duplicative. *NetChoice*, 603 U.S. at 724. Second, there is nothing wrong with overlapping criminal prohibitions. States, after all, may "authorize[]

4

cumulative punishment under two statutes," even if they "proscribe the 'same' conduct." *Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983); *see also White v. Howes*, 586 F.3d 1025, 1035 (6th Cir. 2009) (same). Plaintiffs' sole authority—*R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992)—does not say otherwise. That "fighting words" case says *nothing* about whether States may prohibit speech incident to crime or about the permissibility of overlapping criminal prohibitions.

Unable to dismiss the Act's many constitutional applications, Plaintiffs' only remaining path to succeeding on their facial challenge is to load the other side of the scales with *unconstitutional* applications. *NetChoice*, 603 U.S. at 724. To that end, Plaintiffs claim (at 914) that "the overwhelming majority of actual applications proscribed by the recruitment provision will concern speech about *legal* abortion care, which is the law's intended target." Their proof? A single study suggesting that medication abortion accounted for 63% of all U.S. abortions in 2023. But that general statistic says nothing about the specific focus of the Act: minors obtaining abortions without parental consent. Nor can the number of people who legally obtain medication abortions (the only ones counted by the study) shed any light on whether the Act's allegedly "unconstitutional applications substantially outweigh its constitutional ones," many of which involve *illegal* abortions. *NetChoice*, 603 U.S. at 724. Plaintiffs, then, have failed to "inquir[e] into how [the Act] works in all of its applications"—an inquiry neither they nor this Court can "disregard." *Id.* at 744. That failure is fatal to their facial challenge. *See id.*

\*   \*   \*

At bottom, the Act prohibits targeted recruiting of minors with the intent to facilitate abortions without their parents' consent. Because Plaintiffs testified that they do not engage in this behavior, their claims must fail. Even if this Court disagrees, the proper remedy is a narrow, party-specific injunction—a point Plaintiffs do not dispute. *See generally* Pls.' MSJ Resp.

5

Dated: February 13, 2025            Respectfully submitted,

/s/ *Steven J. Griffin*
STEVEN J. GRIFFIN (BPR# 040708)
  Senior Counsel for Strategic Litigation
MATTHEW D. CLOUTIER (BPR# 036710)
  Assistant Solicitor General
OFFICE OF TENNESSEE ATTORNEY GENERAL
P.O. Box 20207
Nashville, TN  37202
(615) 741-9598
Steven.Griffin@ag.tn.gov
Matt.Cloutier@ag.tn.gov

# CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2025, a copy of the foregoing document was filed using the Court's electronic court-filing system, which sent notice of filing to the following counsel of record:

Daniel A. Horwitz
Melissa Dix
Sarah L. Martin
HORWITZ LAW, PLLC
4016 Westlawn Dr.
Nashville, TN 37209
(615) 739-2888
daniel@horwitz.law
melissa@horwitz.law
sarah@horwitz.com

*Counsel for Plaintiffs*

/s/ *Steven J. Griffin*
STEVEN J. GRIFFIN